. (No. 13824.—Reversed and remanded.)

THE ARMSTRONG PAINT AND VARNISH WORKS, Plaintiff in Error, *vs.* THE CONTINENTAL CAN COMPANY, Defendant in Error.

*Opinion filed December 22, 1921—Petition stricken Feb. 8, 1922.*

1. CONTRACTS—*parties cannot establish contract different from that expressed in writing.* The rule that in construing a contract it is proper for the court to take into consideration the surrounding circumstances does not give to either party the right to establish by oral evidence a different contract from that expressed in the written agreement.

2. SAME—*when proof of conversations prior to contract is not admissible.* All conversations and parol agreements between the parties prior to the making of their written agreement are merged in the writing and cannot be proved for the purpose of changing the contract or showing an intention different from that expressed.

3. SAME—*when new term cannot be added to contract by parol evidence.* If a written contract purports on its face to be a complete expression of the whole agreement it is to be presumed that the parties introduced into it every material item and term, and parol evidence is not admissible to add another term to the agreement about which the contract is silent.

4. SAME—*use of words "required by them" may render sales contract ambiguous.* Where a contract provides for the sale of "a minimum of $2000 worth of tin packages or more, as required"

by the purchaser for actual use in its business between certain dates, evidence of proper facts showing the situation of the parties may be admitted to enable the court to determine the sense in which the word "required" was used by the parties.

5. SAME—*when practical interpretation of contract by the parties may be proved.*  If the language of a written contract is ambiguous or indefinite, proof of the practical interpretation placed upon the contract by the parties themselves is admissible.

6. SAME—*contract for sale of tin cans construed.*  A contract between a can company and a customer for the sale of "a minimum of $2000 worth of tin packages or more, as required by them, (as priced and described below,) which buyers will need for actual use in their business between the date hereof and April 1, 1917," obligates the buyer to purchase $2000 worth of tin packages unconditionally and gives the buyer an option to purchase as many more as it chooses, provided, however, that they are needed for actual use in the buyer's business between the dates specified.

7. SAME—*when the mutuality of an obligation is not essential.*  Where there is no other consideration for a contract the mutual promises of the parties constitute the consideration, and the promises must be binding upon both parties or the contract will fall for want of consideration; but where there is any other consideration for the contract, mutuality of obligation is not essential and there may be a valid unilateral or option contract.

8. PRACTICE—*presumption where the Appellate Court reverses without remanding or finding facts.*  Where the Appellate Court reverses a judgment at law without remanding the cause or making a finding of facts it is to be presumed that the Appellate Court found the facts the same as they were found by the trial court, and that it did not reverse for errors occurring on the trial but because the facts found by it and the trial court did not sustain the cause of action.

9. SAME—*when cause will be remanded to Appellate Court.*  If a judgment of reversal by the Appellate Court is based upon an erroneous view of the law with respect to one branch of the case which it holds disposes of the whole case, and it appears from its opinion that for such reason it has refused to consider and pass upon meritorious assignments of error which it should consider, the cause will be remanded to that court upon reversal of its judgment, with directions to consider and pass upon such questions.

10. SAME—*when controverted questions of fact are involved.*  Whenever an issue is made by the pleadings and evidence must be introduced to maintain the issue controverted questions of fact are involved in the case, which include not only evidentiary facts but ultimate facts, even though there be no conflict in the testimony or the evidence be embodied in a stipulation of facts.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding.

EASTMAN, WHITE & HAWXHURST, (HOMER C. DAWSON, of counsel,) for plaintiff in error.

WHEELOCK, NEWEY & MACKENZIE, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, the Armstrong Paint and Varnish Works, is a corporation engaged in the manufacture and sale of paint and varnish, and defendant in error, the Continental Can Company, is a corporation engaged in the manufacture and sale of tin cans and packages. March 11, 1916, the parties entered into a written contract whereby the can company agreed to sell, and the paint company agreed to purchase, "a minimum of $2000 worth of tin packages or more, as required by them, (as priced and described below,) which buyers will need for actual use in their business between the date hereof and April 1, 1917." Between the date of the contract and February 19, 1917, the paint company ordered, and the can company delivered, $5937.95 worth of tin packages. In the last seven weeks of the term of the contract the paint company ordered $6404.75 worth of tin packages at the prices quoted in the contract, and the can company refused to fill the orders on the ground that the paint company was ordering more than it would "need for actual use" in its business before April 1, 1917. During the year covered by this contract prices on tin packages had almost doubled, and the paint company brought suit for damages in the municipal court of Chi-

cago on account of the failure of the can company to deliver the packages covered by it in its six orders placed in the months of February and March, and recovered a judgment for $4210.75. In its affidavit of defense the can company claimed that it had furnished all the cans the paint company needed in its business during the period covered by the contract, and that the cans ordered and not shipped were not needed by the paint company for actual use in its business prior to April 1, 1917. Subsequently the can company filed an amended affidavit of defense, claiming as an additional defense that the paint company first breached the contract by purchasing, during the life of the contract, some of its requirements from other tin package manufacturers, and that the can company was therefore no longer bound by the provisions of the contract. On appeal the Appellate Court found that the contract required the paint company to purchase from the can company all the tin packages it needed in its business during the life of the contract, and that the paint company had first breached the contract by purchasing some of its requirements elsewhere, thereby relieving the can company from further obligations under the contract. The Appellate Court reversed the judgment of the municipal court and rendered judgment *nil capiat* and for costs against the paint company. The cause comes here by *certiorari*.

The municipal court permitted the paint company, over the objection of the can company, to prove conversations between the representatives of the respective companies while negotiations leading up to the contract in question were in progress. This was error: In construing a contract it is proper for a court to take into consideration the surrounding circumstances. It should place itself as nearly as it can in the same situation as the parties who made the contract, so that it may view the circumstances as they viewed them and so it may judge the meaning of the words and their application to the things described as the

parties judged and applied them. (3 Jones' Com. on Evidence, sec. 453.) But this does not give either party the right to establish a different contract from that expressed in the written agreement. When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing. All conversations and parol agreements between the parties prior to the written agreement are so merged therein that they can not be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement. (3 Jones' Com. on Evidence, sec. 434.) The can company asserts that the contract in question required the paint company to purchase from it all the cans needed in the paint company's business during the term covered by the contract, while the paint company contends that the contract obligated it to buy $2000 worth of packages from the can company, and gave it an option to buy as many more as it desired, at the prices quoted in the contract, prior to April 1, 1917. But the contentions of the parties to the contract are not the criterion which should guide the court in determining whether the written contract is a full expression of the agreement of the parties. The court must determine this from the writing itself. If it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is to be presumed that the parties introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement although the writing contains nothing on the particular term to which the parol evidence is directed.

The rules governing the admissibility of parol evidence to explain written instruments are not so difficult, but the real difficulty arises in determining in each case whether the language of the instrument is ambiguous, as shown either by the context or by the circumstances attending the same. While we feel that the language used in the contract before us is clear and unambiguous, we appreciate that the word "required" has so many and such different meanings that a court would be justified, when a controversy arises as to the meaning given the word by the parties to the contract at the time the contract was signed, in admitting proof of the circumstances surrounding the parties and the object they had in view at the time the contract was made. (*Wolf v. Schwill*, 289 Ill. 190.) Sometimes the word "require" is used in the sense of "need," and sometimes it is used in the sense of "ask" or "want" or "order," and for that reason a contract using the word might be rendered ambiguous. It was therefore proper for the court to hear evidence to the effect that the paint company had not theretofore bought cans from the can company, that the paint company had contracts with other can companies that had not yet expired and that the can company knew this, and any other facts showing the situation of the parties, so that the court might determine in what sense the word "required" was used by them. (*Minnesota Lumber Co.* v. *Whitebreast Coal Co.* 160 Ill. 85.) It is likewise a familiar rule that where the language of the written instrument is ambiguous or indefinite the practical interpretation of the parties may be proved and is often entitled to great weight. (*Whalen* v. *Stephens*, 193 Ill. 121.) Such evidence was received in this case without objection. From this evidence it appears that the parties to the contract construed it as we think it must be construed. As we view the language used in this contract, it clearly means that the paint company unconditionally obligated itself to buy a minimum of $2000 worth of tin packages from the can company and that it was given

the privilege or option of buying more packages if required for actual use in its business. It was not obligated to buy more packages unless it chose to do so, but if it exercised the option to buy more, the can company bound itself to furnish all the packages ordered, so long as they were needed for actual use in the paint company's business before April 1, 1917.

The can company contends that if this construction is placed on the contract it would be unenforceable on the ground that it lacks mutuality. While consideration is essential to the validity of a contract, mutuality of obligation is not. Where there is no other consideration for a contract the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties or the contract falls for want of consideration, but where there is any other consideration for the contract mutuality of obligation is not essential. If mutuality, in a broad sense, were held to be an essential element in every valid contract to the extent that both contracting parties could sue on it, there could be no such thing as a valid unilateral or option contract. Such contracts have long been recognized as valid contracts in Illinois, (*Hayes* v. *O'Brien,* 149 Ill. 403; *Adams* v. *Peabody Coal Co.* 230 id. 469;) and the great weight of authority established by modern decisions is to the same effect. 6 R. C. L. 686; 13 Corpus Juris, 336; *Cooper* v. *Lansing Wheel Co.* 94 Mich. 272, 54 N. W. 39.

The can company filled orders under this contract until it suspected the paint company was ordering beyond its actual needs, and for that reason refused to ship any more packages at the prices quoted in the contract. Considerable correspondence was admitted without objection. February 12, 1917, the can company wrote the paint company that it recognized the right of the paint company to order all the cans it needed for actual use in its business up to April 1, 1917, but that it did not consider that the paint company

had a right to order packages beyond its actual needs, for the purpose of storage. It called attention to the fact that the paint company had on hand 134 crates which it was required to empty and return to the can company, and that this indicated that it was not using the cans which had been delivered to it. To this letter the paint company replied February 14, denying that it was storing up packages or that it was carrying any larger stock than usual. It stated that its increase in orders was due to an unusual increase in business. In this letter it states: "Our contract with you calls for an unlimited amount of cans, and, as you very well know and must appreciate, we could legally send you orders for enough cans to cover our entire 1917 requirements and you would have to deliver them, and if we don't do this we are passing up an opportunity to make $15,000 or more, which I don't see any good reason for doing." In a letter dated February 28 the paint company said, among other things: "It is also our privilege to order out an unlimited quantity of cans on our present contract, and this we propose to do, and will forward you other orders in the course of a few days which we shall certainly insist on your delivering." In reply to this letter the can company wrote March 5: "In one of your letters you suggest that you could send us orders for your entire 1917 requirements, and in another letter you advise that you intend to order out a very large quantity of cans. We have to differ with you, for we are only entitled to sell you the quantity of cans which would be for actual use in your business prior to April 1, and only then upon reasonable delivery notice." In this part of the contract we think there is no ambiguity whatever. It says, as plainly as the English language can state a proposition, that the paint company is entitled to order as many packages as it will need for actual use in its business before April 1, 1917, and the can company is under no obligation to supply cans to the paint company in

excess of those actually required by the paint company for use in its business in that time.

Where the Appellate Court reverses a judgment without remanding the cause and makes no finding of facts different from those found by the trial court, three presumptions arise: First, that the Appellate Court found the facts the same as the trial court, otherwise it would have recited its findings in its judgment, as required by statute; second, that the Appellate Court did not reverse the judgment of the trial court for erroneous rulings on questions of law arising on the trial, because if it had it would have remanded the cause for another trial; and third, that having found the facts the same as the trial court found them and not having reversed the judgment for erroneous rulings on questions of law, it must be inferred that the Appellate Court held the facts as found by it and the trial court insufficient to sustain the cause of action. (*Busenbark* v. *Saul,* 184 Ill. 343; *Abdill* v. *Abdill,* 292 id. 231; *Dandyline Co.* v. *Linsk,* 295 id. 69.) If the question decided by the Appellate Court were the only question in this case, the views we have expressed would require a reversal of the judgment of the Appellate Court and an affirmance of the judgment of the municipal court, but that is not the situation here. While error cannot be assigned in this court on the opinion of the Appellate Court, we may examine the opinion to determine the reasons for the decision and judgment of that court. When, on such an examination, we discover that the Appellate Court has not considered or passed upon meritorious questions properly raised by assignments of error which the court should consider and pass upon, and its judgment is based on an erroneous view of the law with respect to one branch of the case which it holds disposes of the whole case and for that reason it refuses to consider meritorious assignments of error before it, its judgment will be reversed and the cause remanded to it to consider such errors. (*Logan* v. *Mutual Life Ins. Co.*

293 Ill. 510.)   One of the issues of fact before the municipal court and the Appellate Court was whether the tin packages about which this controversy has arisen were needed for actual use in the paint company's business before April 1, 1917.   Wherever an issue is made by the pleadings and evidence must be introduced to maintain the issue, controverted questions of fact are involved in the case which include not only evidentiary facts but ultimate facts, even though there be no conflict in the testimony or the evidence may be embodied in a stipulation of facts.   (*Navratel* v. *Curtis Door and Sash Co.* 290 Ill. 526; *Dandyline Co.* v. *Linsk, supra.*)   Since this court is precluded from reviewing the controverted question of fact presented by the contention of the can company that the tin packages in controversy were not needed for actual use by the paint company before April 1, 1917, and the further question that the evidence does not justify the amount of damages awarded, we must remand the cause to the Appellate Court to consider those questions of fact.

The judgment is reversed and the cause is remanded to the Appellate Court for the First District, with directions to that court to affirm if it finds the facts the same as they were found by the municipal court.   If, on the other hand, the Appellate Court finds the facts different from the finding of the municipal court and finds that no recovery can be had on the evidence, the Appellate Court will reverse the judgment of the municipal court and will recite its finding of facts in its final judgment, as required by statute.   If in its investigation of this branch of the case the Appellate Court finds errors in the rulings of the municipal court on questions of law arising on the trial, it will, in that event, enter such judgment as in its opinion shall be proper.

*Reversed and remanded, with directions.*