(No. 76070.—

J&B STEEL CONTRACTORS, INC., d/b/a J&B Steel Reinforcing and Erection, Appellee, v. C. IBER & SONS, INC., et al., Appellants.

*Opinion filed October 20, 1994.*

F. Louis Behrends and Frank A. Hess, of Behrends & Gentry, of Peoria, for appellants.

William R. Kohlhase, of Miller, Hall & Triggs, of Peoria, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The issues raised in this case turn on whether evidence beyond a writing itself may be considered in determining its completeness for purposes of the parol evidence rule.

## BACKGROUND

The question arises from a suit filed in the circuit court of Peoria County by J&B Steel Contractors, Inc. (J&B), a subcontracting firm, against C. Iber & Sons,

Inc. (Iber), a general contractor. The suit sought foreclosure of a mechanics' lien as well as other relief in connection with the construction of a parking garage for Proctor Community Hospital in Peoria. In each of the four counts, J&B alleged that, through Iber's fault, J&B was precluded from completing its work on the date scheduled at the anticipated cost. J&B attached as an exhibit to the complaint a writing in the form of a numbered purchase order, dated December 7, 1989, executed by Iber, pertaining to the work to be done. The purchase order set forth the price of J&B's performance, $220,799, but did not specify a completion date.

J&B alleged, however, that the purchase order merely confirmed understandings reached by representatives of it and Iber in a telephone conversation three days earlier. In fact, the order directed that it be "enter[ed]" by J&B "in accordance with the terms and conditions of" the "telephone proposal on 12/4/89." Those terms and conditions, J&B alleged, included the understanding that, at the stated price, it was not obligated to perform work beyond July 31, 1990. The only reference to that date in the purchase order is one specifying it as the date through which J&B was to supply a foreman experienced in the nature of the subcontract.

Iber successfully moved to dismiss the suit pursuant to section 2—615 of the Code of Civil Procedure (see Ill. Rev. Stat. 1991, ch. 110, par. 2—615), but the appellate court reversed and remanded for further considerations (246 Ill. App. 3d 523).

The court reasoned that no finding had been made that the purchase order stated the entirety of the parties' understandings. (246 Ill. App. 3d at 529.) Were the purchase order such a complete statement, or total integration, the allegations relating to the telephone proposal would be rendered meaningless by the parol

evidence rule. (246 Ill. App. 3d at 529.) That rule generally precludes evidence of understandings, not reflected in a writing, reached before or at the time of its execution which would vary or modify its terms.

The court directed the trial judge on remand to look not only at, but beyond, the purchase order itself to answer the integration question. (246 Ill. App. 3d at 529.) It outlined a procedure for doing so, borrowing considerations attendant motions for summary judgment. (246 Ill. App. 3d at 529.) Remaining issues were answered conditioned on the trial judge's finding that July 31, 1990, was the date after which J&B was not obligated to perform at the cost stated in the purchase order. 246 Ill. App. 3d at 529-31.

We allowed Iber's petition for leave to appeal. (134 Ill. 2d R. 315.) We agree with the appellate court's conclusion that the complaint should not have been dismissed. But we must reject most of the analysis employed as well as the considerations the appellate court directed the trial judge to follow on remand. We therefore affirm but do so for other reasons.

## DISCUSSION

Iber raises, as a threshold matter, the notion that the appellate court should not have addressed the question of integration because the parties neither briefed nor argued it. Iber points to the rule, especially applicable where reversal of a trial court judgment is urged, limiting review to the issues actually raised. See *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386; *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242; *Seifert v. Demaree* (1942), 380 Ill. 283, 290.

The argument assumes that there is reason to honor the rule on *de novo* review of a section 2—615 dismissal. (But see *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 495-96 (noting, generally, that no judgment based on an erroneous legal theory can be allowed to stand).)

But whether the argument's premise is valid is of no immediate concern—the argument fails for an even more fundamental reason.

Iber did not assert in the appellate court that the purchase order stood as the complete agreement of the parties. Iber did, however, argue for application of the parol evidence rule. Again, the rule would render inconsequential the crucial allegations as to the telephone proposal. Any assessment of the rule's application would hinge on a preliminary determination that the purchase order was a complete integration. (See, *e.g.*, *Oldenburg v. Hagemann* (1991), 207 Ill. App. 3d 315, 326.) In short, Iber's argument was the very reason for the appellate court's analysis.

## Integration

The appellate court premised its analysis on what it determined was "a split of authority" in this State as to the question of integration. (246 Ill. App. 3d at 528.) Our appellate court has, indeed, reached different conclusions as to whether integration is a factual or legal question and whether it is to be answered against only the subject writing. (246 Ill. App. 3d at 528 (citing *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63, and *Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 582 (considering the question a legal one to be determined from the writing alone)); *Geoquest Productions, Ltd. v. Embassy Home Entertainment* (1992), 229 Ill. App. 3d 41, 45 (agreeing that the question is a legal one but holding evidence beyond the writing permissible); *Maas v. Board of Trustees of Community College District No. 529* (1981), 94 Ill. App. 3d 562, 581 (agreeing that evidence beyond the writing is permissible but deeming the question a factual one); see also *Lewis v. Loyola University* (1986), 149 Ill. App. 3d 88, 93 (citing *Maas v. Board of Trustees of Community College District No. 529* for the rule that extrinsic evidence is permissible but

indicating nothing as to the nature of the question as factual or legal).) But, in fact, no "split of authority" exists.

The rule in cases not governed by the Uniform Commercial Code (UCC) is that only the subject writing may be considered to determine the integration question. That has been the rule since this court last considered the issue in 1921 in *Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 106. It remains the standard this State's trial and appellate courts are bound to apply in cases where the UCC does not operate. See also *Telluride Power Transmission Co. v. Crane Co.* (1904), 208 Ill. 218, 226; *Orr v. Ward* (1874), 73 Ill. 318.

*Armstrong* followed the "better view" recognized in Burr W. Jones' treatise on evidence. (*Armstrong*, 301 Ill. at 106, citing 3 Jones' Commentaries on Evidence §§ 434, 453 (1913); see 3 Jones' Commentaries on Evidence § 440, at 182-83 (1913) (stating that "according to the better view the only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself").) It overruled, *sub silentio*, cases such as *Fuchs & Lang Manufacturing Co. v. R.J. Kittredge & Co.* (1909), 242 Ill. 88, and *Ruff v. Jarrett* (1880), 94 Ill. 475, which indicated it was permissible to consider circumstances beyond the subject writing. See also 3 Jones' Commentaries on Evidence § 440, at 184-85 (1913), citing *Wheaton Roller-Mill Co. v. John T. Noye Manufacturing Co.* (1896), 66 Minn. 154, 156, 68 N.W. 854, 855 (allowing extrinsic evidence to show "the circumstances under which and the purposes for which [a] writing was executed").

The question raised by the parties here is whether the rule of *Armstrong* should remain viable. The more modern approach favors liberalizing the admission of evidence to determine the integration question. (See J.

Calamari & J. Perillo, Contracts § 3—3, at 111 (2d ed. 1977).) Such is the approach of the Restatement of Contracts as well as the UCC. See Restatement (Second) of Contracts § 214 (1979); see also Restatement (Second) of Contracts § 214, Comment, at 133 (1979); see Ill. Rev. Stat. 1989, ch. 26, par. 2—202; see J. Calamari & J. Perillo, Contracts § 3—7, at 114—6 (2d ed. 1977).

Through adoption of the UCC in 1961, the liberalized approach is also followed in this State, but, as alluded to earlier, only in cases governed by the UCC. That approach cannot be reconciled with the rule of *Armstrong*, which remains applicable in Illinois in all other instances, including cases such as this. But though concern is raised as to the worth of continued adherence to that rule, this case provides no cause to break from it; the purchase order alone answers the issue of integration. Extrinsic evidence is unnecessary to that determination. And, so long as the rule of *Armstrong* remains applicable, a writing's completeness as measured against it remains a legal question to be determined by the trial judge. (See J. Calamari & J. Perillo, Contracts § 3—2, at 103 (2d ed. 1977).) Consequently, given *de novo* review of the dismissal in this case, there is no reason to outline any procedure to follow regarding integration on remand.

### The Purchase Order

The question of completeness is actually the second of two concerns relevant to whether, and to what degree, the purchase order is an integration. (See J. Calamari & J. Perillo, Contracts § 3—2, at 103 (2d ed. 1977).) The first is whether the purchase order is a final expression of the agreement between J&B and Iber. See J. Calamari & J. Perillo, Contracts § 3—2, at 101 (2d ed. 1977).

It is such an expression. The allegations of J&B's complaint, assumed true for purposes of Iber's motion to dismiss, imply that J&B began its performance without

responding to the purchase order. That is sufficient as to the question of finality. (See J. Calamari & J. Perillo, Contracts § 3—2, at 102 (2d ed. 1977) (noting that a letter of confirmation generally acts as an integration if the other party makes no response to it at least prior to performance).) The purchase order is therefore an integration, leaving only the question of the completeness of its expression. See J. Calamari & J. Perillo, Contracts § 3—2, at 103 (2d ed. 1977).

As a complete expression, or total integration, the parol evidence rule would preclude J&B's attempts to supplement what is provided in the purchase order through evidence of alleged understandings reached in the telephone proposal. (See J. Calamari & J. Perillo, Contracts § 3—2, at 101, 103 (2d ed. 1977).) But as only an incomplete expression, or partial integration, supplementation by additional, consistent terms would not be precluded. See J. Calamari & J. Perillo, Contracts § 3—2, at 101, 103 (2d ed. 1977).

The purchase order consists of five pages. The first four contain typewritten provisions pertaining to the work J&B was engaged to perform, namely, "installation *** of reinforcing steel, post-tensioning and welded wire fabric." The fifth page is not addressed specifically to either J&B or that performance. It contains additional provisions not unlike the standardized terms found in form contracts. Those provisions pertain to J&B's general responsibilities as a subcontractor engaged by Iber. The provisions contained on that page, as might be expected given their standardized nature, reveal nothing as to July 31, 1990.

Reference to the telephone proposal appears near the top of the purchase order's first page. It was accomplished by tailoring, through typewritten overstrikes and insertions, a sentence containing blank spaces. Uncompleted, the sentence would have appeared as follows:

"ENTER THE FOLLOWING ORDER IN ACCOR-
DANCE WITH THE TERMS AND CONDITIONS OF
YOUR _____
SHIPMENT OR INSTALLATION TO BE COMPLETED
_____."

As altered, the sentence reads:

"ENTER THE FOLLOWING ORDER IN ACCOR-
DANCE WITH THE TERMS AND CONDITIONS OF
YOUR telephone proposal on 12/4/89 by Terry Estes with
Jerry Leander ~~SHIPMENT OF~~ INSTALLATION TO BE
~~COMPLETED~~ begin as required by job progress."

Immediately below that sentence are two paragraphs generally outlining J&B's responsibility to "[f]urnish all labor to complete the installation" in accordance with various drawings and documents identified. Beneath those paragraphs is a list of particular responsibilities. Relevant here, J&B was made responsible for providing a "[f]ull time foreman, experienced in post-tensioned concrete *** through July 31, 1990." J&B was also responsible for "[s]upply[ing] sufficient manpower and supervision to keep the job on schedule as agreed upon." J&B's responsibility to provide supervision was the subject of a second reference in a section of the purchase order denoted "Notes" containing additional particulars. That reference required J&B to provide supervision "while [its] work [was] in progress."

Iber accurately points out that the absence of a completion date for J&B's performance would not necessarily prevent the purchase order from being a total integration. (See *Armstrong*, 301 Ill. at 106 (noting that if a writing shows itself to be a complete expression, parol evidence cannot be admitted to add another term, though the writing may contain nothing regarding it particularly).) But it is the conspicuous absence of such a date which shows, in view of the provisions above, that the purchase order cannot be considered a complete expression of the parties' agreement.

Constructive deletion of the word "COMPLETED"

and insertion of terms regarding the commencement of J&B's performance in the reference might arguably indicate an intent against the inclusion of a specific completion date. But the argument fails in view of the reference conditioning that direction, and, indeed, the entire purchase order, on what was discussed between the parties three days earlier over the telephone. And, as the appellate court noted, there is no language indicating that the terms earlier discussed were merged into the purchase order's provisions. The reference to the telephone proposal and the absence of a merger clause is the first and foremost reason to conclude that the purchase order does not embody all of the understandings reached by the parties.

A second reason is found in the consistent construction of the provisions pertaining to J&B's responsibility regarding supervision of its work and requests to extend the time of performance. J&B was to provide supervision for the duration of its performance on the project, that is, until the date its work was completed. But, in requiring J&B to supply a full-time foreman only through July 31, 1990, the purchase order reveals an expectation that the date for that performance would be on or before July 31, 1990. Such an expectation is also critical to making sense of the provision contained in paragraph "J" of the purchase order's fifth page. Paragraph "J" permits J&B to request a "time extension" in the event of a delay. Such an extension would necessarily have to be premised on a targeted completion date for J&B's performance. The absence of such a date is most reasonably explained by the conclusion that the purchase order is but a partial integration.

That is the conclusion we reach. The parol evidence rule therefore cannot preclude J&B from offering proof of terms allegedly agreed to during the telephone proposal that are consistent with and would supplement, but not contradict, the purchase order.

Consideration has so far centered on J&B's allegation that, at the price stated in the purchase order, it was not obligated to work beyond July 31, 1990. Like other legally sufficient allegations of J&B's complaint, that must ultimately be determined by a trier of fact. A finding of that allegation as fact is, as the appellate court noted, crucial to the consideration of the other arguments raised by Iber to support dismissal of the complaint.

### The "No Damage for Delay" Clause

Paragraph "J" mentioned above also purports to exempt Iber for liability to J&B "for any damages of any kind for any delays" by "any *** cause whatsoever." Iber argues that even if as J&B alleged, it was Iber's fault that J&B could not meet a completion date, paragraph "J" would preclude J&B from recovering damages.

Indeed, the provision might, depending on proof as to what caused the alleged delay. Such exculpatory clauses—commonly referred to as no-damage-for-delay clauses—are enforceable though they are construed strictly against those who seek their benefit. (See Annot., 74 A.L.R.3d 187, 200-01 (1976).) But we are presently concerned only with whether the allegations of J&B's complaint, taken as true, state a legally sufficient cause of action.

Relevant to that determination are certain exceptions to no-damage-for-delay clauses. (See generally Annot., 74 A.L.R.3d 187 (1976).) The exceptions, one or more of which operate in most jurisdictions, are employed to avoid the harshness of such clauses, particularly those sweeping as broadly as the one here. (See Annot., 74 A.L.R.3d at 200-01.) This court generally acknowledged the exceptions in *Bates & Rogers Construction Corp. v. Greeley & Hansen* but has never had an opportunity to address which, if any, should be

recognized in Illinois. See *Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 230, 232 (noting the case involved no argument for application of the exceptions but that its holding was not inconsistent with decisions in other jurisdictions, one of which recognized an exception for bad faith or gross negligence); but see *John Burns Construction Co. v. City of Chicago* (1992), 234 Ill. App. 3d 1027, 1033 (including the decision in *Bates* with appellate decisions stating that exceptions have been recognized in Illinois).

Our appellate court has, however, had such opportunity. It has stated exceptions exist for delay caused by "bad faith," delay "not within contemplation of parties," delay of "unreasonable duration," and delay attributable to "inexcusable ignorance or incompetence of engineer." (See *John Burns Construction Co. v. City of Chicago* (1992), 234 Ill. App. 3d 1027, 1033 (citing the sum total of appellate decisions to date on the issue).

The first two of the exceptions recognized generally by our appellate court fall within those more or less universally acknowledged. (See Annot., 74 A.L.R.3d at 201.) The circumstances of this case make relevant those two exceptions; the first because it is applicable to the allegations of J&B's complaint, and the second because it served as the basis for the appellate court's decision on the issue here. (See 246 Ill. App. 3d at 529-30.) We therefore address the scope of those exceptions and determine whether they should operate in this State. We decline, however, to similarly examine the other exceptions recognized by our appellate court—those for delays of "unreasonable duration" and delays attributable to "inexcusable ignorance or incompetence of engineer"—as they are not so implicated.

Contracting parties are generally empowered to define the limits of their respective obligations. And courts may not arbitrarily create exceptions to provi-

sions found in private contracts which effectively supplant that power. (See, *e.g.*, *Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360, 371 (acknowledging the parties themselves had addressed the issue of damages for delay in their contract).) Thus, one measure of any judicially created exception's validity is the extent to which it avoids a harsh result yet honors the notion that merely bad bargains are beyond the concern of courts. Both of the exceptions relevant here meet that test.

## Tortious, Wrongful, Willful

The most widely recognized exception to a no-damage-for delay clause encompasses bad faith, fraud, concealment, or misrepresentation on the part of the party asserting the clause's operation. (See Annot., 74 A.L.R.3d at 215-16.) The exception arises from duties of good faith and fair dealing implied in every contract. (See Annot., 74 A.L.R.3d at 215.) Its operation is, in that respect, essential to judicial enforcement of the legitimate objects of any agreement. We therefore agree with the appellate court that such an exception should be recognized in Illinois.

## Beyond Contemplation of the Agreement

Not unlike the manner implied duties give rise to the exception above, the mutual assent necessary for every contract gives rise to its own related exception. Delays and obstructions not within contemplation of the parties at the time the agreement was executed necessarily lie beyond the contract's intended scope. (See Annot., 74 A.L.R.3d at 215.) Such delays and obstructions and their causes have been held to remain actionable despite no-damage-for-delay clauses. See Annot., 74 A.L.R.3d at 215.

Reasonable foreseeability is the touchstone of the exception. The contracting parties' relationship and its

objectives and attendant circumstances must be taken into account. (See Annot., 74 A.L.R.3d at 215.) Only unforeseeable delays and obstructions or those not naturally arising from performance of the work itself or the subject of the contract come within the exception. See Annot., 74 A.L.R.3d at 215.

Like that above, the immediate exception springs from the elemental foundation of the parties' agreement. It, too, is an essential mechanism in enforcing the contracting parties' expressed intent. We therefore conclude such an exception should also be recognized in Illinois.

### Allegations Respecting Damages

Only the first two counts of J&B's complaint seek recovery for extra costs incurred. Only those two counts are therefore affected by the argument that a claim for damages is precluded under paragraph "J" of the purchase order.

In count I, J&B alleged that it incurred extra costs of $50,917.68 due to Iber's wrongful conduct. Specifically, J&B alleged that Iber "fail[ed] to properly supervise and coordinate the construction." And, when problems related to that failure arose, Iber "intentionally and contrary to [its implied] obligations of good faith and fair dealing" took "little or no" corrective action.

Under the exception to no-damage-for-delay clauses for tortious, wrongful, or willful misconduct, the allegations of count I are facially sufficient to overcome Iber's motion. We agree with the appellate court that count I should not have been dismissed but disagree that the not-within-contemplation-of-the-parties exception controls that outcome.

Examination of the allegations of count II is almost as simple. In that count, J&B alternatively alleged Iber owed it the $50,917.68 "as a consequence of a change in the scope of [J&B's] work." The change in scope was due

to Iber's "changing of the schedule for the job so that it could not be completed by July 31, 1990." J&B alleged that the contract required Iber to issue a change order to compensate J&B for additional work beyond that time, but Iber "refused" J&B's request to issue one.

The purchase order does, in fact, provide in its type-written provisions that Iber was obligated to "advise" of "all changes in the scope of work in a timely manner" and to "work" with J&B "to establish a fair value for the changes involved." It further advises J&B not to "perform any extra work" without "a written change order authorizing same."

Again, under the exception to no-damage-for-delay clauses for tortious, wrongful, or willful misconduct, the allegations of count II are sufficient to overcome Iber's motion. Although bad faith or other wrongful conduct covered by the exception is not specifically alleged, it may be inferred from the allegations of Iber's conduct. Not only is it alleged that Iber intended its schedule change to preclude J&B from timely completing its per-formance, but Iber denied J&B the means necessary to obtain fair compensation for the attendant costs. We conclude, in the same manner as above, that the allegations are sufficient to withstand Iber's motion, al-though not pursuant to the exception the appellate court cited.

### Iber's Alleged Duties with Regard to J&B's Performance

In an argument somewhat related to that based on the no-damage-for-delay clause, Iber argues that the purchase order imposed no duty on it to coordinate the overall construction. Therefore, it asserts, J&B's allegations that it could not complete its subcontracted work by July 31, 1990, are not actionable.

Iber relies on *J.F. Edwards Construction Co. v. Illinois State Toll Highway Authority* (1975), 34 Ill. App.

3d 929, which involved a subcontractor's suit against the Illinois highway toll authority. The subcontractor alleged that the authority had "negligently scheduled" the work of other subcontractors. As a result, it had breached implied duties to have construction sites available on the date set for the subcontractor to begin work.

Citing what it determined were analogous Federal decisions, the court looked to the provisions of the particular contract. Those provisions, the court concluded, showed that the time fixed for the subcontractor's performance was provisional. (*Edwards*, 34 Ill. App. 3d at 934.) The performance was, in fact, to be controlled by the authority's engineer "notwithstanding the dates specified." *Edwards*, 34 Ill. App. 3d at 933.

The decision in *Edwards* lends no support to Iber's argument that the allegations of J&B's complaint are legally insufficient. Here, J&B alleged that the agreement between it and Iber included the specific understanding reached between the parties in the telephone proposal that J&B was not obligated to work beyond July 31, 1990. That is sufficient in light of the conclusion that the parol evidence rule does not preclude evidence of such an understanding. Iber's duty to keep the work on schedule can be inferred from J&B's allegations regarding the purported completion date for its performance on July 31, 1990. See *Amp-Rite Electric Co. v. Wheaton Sanitary District* (1991), 220 Ill. App. 3d 130, 151-52 (acknowledging the rule that one who has the right to control the work has an implied obligation to keep the work on schedule).

### J&B's Suspension of Work

J&B's complaint acknowledges that J&B suspended performance prior to its completion of the work outlined in the purchase order. Iber seizes on those allegations to assert J&B thereby effectively admitted to its own breach of contract. Iber points to paragraphs "B" and

"C" of the fifth page of the purchase order. Paragraph "B" declares the purchase order terminated by an abandonment of, or refusal to continue with, the work. Paragraph "C" provides that, in the event of termination, no further payment under the purchase order would issue.

Iber's argument ignores the substance of the allegations of the complaint. J&B alleged it suspended its work only because of Iber's breach of the purchase order. If Iber did, in fact, breach the purchase order, J&B's suspension of work would be justified. As the appellate court recognized, that determination awaits a factual determination of the parties' entire agreement, including whether July 31, 1990, was the date after which J&B was not obligated to perform work under the purchase order.

In sum, the dismissal of J&B's complaint was error. We therefore affirm, but for the reasons outlined above, the appellate court's reversal of the circuit court's order.

*Affirmed.*