# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00592-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*SCI, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/96 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WHITNEY B. BYARS |
| | PEYTON S. IRBY, JR. |
| ATTORNEY FOR APPELLEE: | THOMAS W. PREWITT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 07/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

### BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. The Mississippi Transportation Commission (Commission) appeals a judgment in favor of SCI, Inc. (SCI) based on the Commission's breach of a highway construction contract. The Commission alleges that the circuit court improperly granted summary judgment to SCI regarding damages, that the Commission deserved a judgment notwithstanding the verdict, that the circuit court improperly granted SCI an additur, and that the circuit court erred in refusing to allow the Commission to file a third-party complaint. We affirm the decisions of the circuit court below, except with regard to the award of summary judgment as to the damages recoverable by SCI. While the circuit court is fully empowered to grant summary judgment after the refusal of an additur, we find that the circuit court in this case erred in finding that no genuine issue of material fact existed in relation to SCI's damages. The Commission did raise factual disputes that required a jury determination. We also note that the statement that the Commission acted as "stewards for the taxpayers," which was made in front of the jury by the attorney for the Commission was wholly inappropriate. Accordingly, we reverse and remand for a new trial on damages only.

### BACKGROUND

¶2. In 1992, the Commission issued an advertisement to bidders, inviting contractors to submit bids to construct improvements to Highway 603 in Hancock County. SCI, a contracting company that builds bridges and highways, submitted a proposal of $7,882,180.35 for the Highway 603 Project. SCI, which had previously bid successfully on contracts with the Commission, submitted the low bid and was chosen to be the contractor for the project.

¶3. The bid package contained a form contract and a Utility Certification. The form contract signed by SCI incorporated the Mississippi Standard Specifications for Road and Bridge Construction. Also contained in the bid package was the Utility Certification, dated August 21, 1992. The Commission alleges that of all the utility conflicts, only three set forth a specific relocation date, and the other utility conflicts failed to provide a specific date for relocation or removal of the utility conflicts. SCI argues that the Commission promised SCI that numerous utility poles, lines and pipelines that crossed and paralleled the Highway 603 Project area would be removed by the end of January 1993.

¶4. On October 16, 1992, SCI and the Commission executed the contract for the Mississippi Highway 603 Project in Hancock County. SCI was to build two new lanes on a seven-mile stretch of Highway 603 from Kiln to Waveland. SCI was also supposed to lay a new asphalt topping on the two existing lanes of Highway 603 in the same stretch. The completion date was specified as July 28, 1994.

¶5. At the time SCI executed the contract, some utility conflicts still had not been relocated by the dates set forth in the Utility Certification. Though the parties agree on that fact, at trial, the parties disputed whether or not SCI's work progress was or should have been delayed by these utility conflicts. Nonetheless, on October 29, 1992, SCI requested that the Commission not count time against it, since some utilities were still conflicting with its construction efforts.

¶6. On November 5, 1992, a preconstruction conference was held with representatives of the Commission, SCI, and several of the utility companies present. The parties discussed project formalities along with the status of the utility conflict relocation work. Apparently, it was mentioned that several of the utility conflicts would not be relocated or removed in the near future. The day after the conference, parties from the Commission and SCI discussed the possibility of terminating the contract because of the utility conflicts. However, SCI indicated that it would attempt to continue.

¶7. Work on the Highway 603 Project continued, but according to SCI, operations were rendered much less efficient and much more costly because it had to work around utility conflicts which had not been resolved. The Commission argues that SCI essentially remained on schedule through 1993. Nonetheless, in May 1993, Shackelford sought to terminate SCI's contract. However, the Commission directed SCI to continue with its work. SCI tried again to terminate the contract, but the Commission continued to charge time units against SCI. In November 1994, SCI and the Commission executed a supplemental agreement which acknowledged that certain utility conflicts had not been resolved until September and October 1993. Feeling aggrieved, SCI brought a breach of contract suit against the Commission on December 9, 1994, in the Circuit Court of Hancock County.

¶8. Meanwhile, in March 1995, the parties executed another supplemental agreement, under which SCI received $600,000, an advance to complete the Highway 603 Project. The Commission also granted SCI time extensions because of the utility conflicts and an inability to secure a needed material for road bed stabilization.

¶9. SCI filed a motion for partial summary judgment on July 5, 1995, alleging that there was no genuine issue of material fact existing as to liability. The circuit court denied this motion. On July 12, 1995, the Commission filed a motion for leave to file third-party complaint, seeking to join as party defendants the phone, electric, water, gas and cable utilities which allegedly caused the delay in the Highway 603 Project. The circuit court also denied this motion, noting that the Commission had "taken no steps to expeditiously resolve the action." Subsequently, the circuit court set the trial date for October 2, 1995.

¶10. The jury received the case on October 6, 1995, and returned a verdict in favor of SCI. The jury awarded SCI $2,370,888.85 in damages, with $153,386.85 designated for a claim made by the Bond Paving Company. The jury did not grant an award for SCI's claim for damages allegedly incurred because of the sale of the Menge Avenue dirt pit. The trial court entered final judgment on October 17, 1995.

¶11. SCI then filed a motion for new trial or additur. On October 24, 1995, the Commission filed a motion for judgment notwithstanding the verdict. The circuit court denied the Commission's motion but granted SCI an additur of $2,282,498.00, bringing the total judgment to $4,653,386.85. The Commission eventually rejected the additur and a new trial for damages only was scheduled for May 6, 1996.

¶12. On January 29, 1996, the Commission renewed its motion for leave to file third party complaint. However, the circuit court never ruled on the motion. On March 15, 1996, SCI filed a motion for summary judgment on the issue of damages alone. After a hearing, the circuit court granted the motion and entered judgment in favor of SCI in the amount of $4,653,386.85. Aggrieved, the Commission filed a timely appeal to this Court.

## ANALYSIS

### I. Whether the Circuit Court of Hancock County, Mississippi erred in granting summary judgment to SCI, Inc., the Plaintiff-Appellee.

¶13. The Commission believes that the circuit court's grant of summary judgment on damages to SCI "caused a grave miscarriage of justice" and frustrated the "well-established legal principles of additurs and remittiturs of this State."

> "It is well-settled that a motion for summary judgment challenges the legal sufficiency of all or part of an opponent's case." "The motion lies only where there is no genuine issue as to any material fact. A fact is material if it tends to resolve any of the issues properly raised by the parties."

> This Court conducts a de novo review of the record on appeal from a grant of a motion of summary judgment. "When reviewing an award of summary judgment, this Court views all evidence in the light most favorable to the non-movant, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. and will presume that all evidence in the non-movant's favor is true." If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, this Court affirms the decision.

*Diogenes Editions, Inc. v. State ex rel. Bd. of Trustees of Inst. of Higher Learning*, 700 So. 2d 316, 319 (Miss. 1997) (citations omitted).

¶14. Initially, the Commission argues that the circuit court below was without authority to enter summary judgment after refusal of an additur and election of a new trial on damages. However, SCI argues that the trial court is entitled to grant summary judgment, if appropriate, in cases that have been remanded for a trial on damages only, relying on *United States v. United States Gypsum Co.*, 340 U.S. 76, 86 (1950). The procedural history in **United States Gypsum** was somewhat different from the instant case, since there was no additur or remittitur involved. Rather, after reversing an order of dismissal, the Supreme Court remanded the case to the district court for further proceedings. *Id.* at 81. At that point, one party moved for summary judgment on the grounds that there was no genuine issue of material fact. *Id.* Recognizing the trial court's ability to grant summary judgment on remand, the Court noted that the trial court, in determining whether genuine issues of fact remained, could rely on the findings of the Court in previous procedural appeals. *Id.* at 86. Then the Court went on to evaluate the proof regarding summary judgment. *Id.* at 87.

¶15. While the Commission argues that the additur/remittitur statute does not allow a trial court to enter summary judgment, it offers no precedent to support its position. The situation faced by the circuit court here is analogous to **United States Gypsum**. The circuit court below had already received damages evidence in the trial of the matter. Upon the summary judgment motion, SCI offered proof based on the jury's determinations and the circuit court's amended order. To the itemization of facts presented by SCI in support of its summary judgment motion, the Commission responded with its own brief and admissions/denials of SCI's itemized facts. At that point, the circuit court issued an order that read in part:

> Came on for hearing the Motion of SCI, INC., For Summary Judgment, and the Court, having considered and read the Motion and Briefs in support and opposition thereto, as well as all of the evidence submitted at the first trial that began October 2, 1995, and MDOT's Supplemental Responses to SCI's First Set of Interrogatories, and having heard and considered the arguments of counsel, finds and concludes that Plaintiff's Motion is well taken and should be granted.

¶16. A party seeking to recover upon a claim may, *at any time after the expiration of thirty days from the commencement of an action*, move for a summary judgment in his favor. Miss. R. Civ. P. 56(a). *See also* **Soley v. Star & Herald Co.**, 390 F.2d 364, 367 (5th Cir. 1968) (recognizing the general rule which permits judicial notice of a court's prior cases to support a motion for summary judgment, but reversing because in his order, the trial judge made no specific reference to the basis for his grant of summary judgment).[1] Accordingly, we hold that it was proper for SCI to move for summary judgment, and we also hold that the circuit court was within its power to grant summary judgment in the trial on damages, if such judgment was proper.

¶17. The question becomes, then, whether summary judgment for SCI was actually appropriate in this case. Clearly, the Commission had the alternative to elect a new trial on damages only, after refusing the additur. **Odom v. Roberts**, 606 So. 2d 114, 121 (Miss. 1992). There was, on remand, no question that the Commission breached the contract with SCI. Pursuant to **United States Gypsum**, it was proper for the circuit court to rely on its determination that SCI's proof at trial was "inherently probable, reasonable, credible, and trustworthy." However, since the circuit court determined that the

original jury award of $2,370,888.65 was influenced by bias, passion, and prejudice, that award should have been treated as a nullity instead of a floor for awarding damages. As a result, the additur ordered by the circuit court was, at best, a suggestion offered to the Commission, which was rejected in lieu of a new trial on damages.

¶18. The Commission argues that numerous issues of material fact remain as to the extent of damages due SCI and, accordingly, that summary judgment was inappropriate. Further, the Commission argues, evidence showed that SCI could do productive work even with utilities present on the project site, that there was a difference in the damages actually incurred by SCI, and that SCI was not entitled to recover for "extra work" because it was not required to perform such work. The Commission also disputed the method by which SCI calculated its damages.

¶19. To determine the propriety of summary judgment, this Court must conduct a de novo review of the evidence regarding damages that was relied on by the circuit court below. Specifically, the Commission cites testimony suggesting that SCI failed to mitigate its damages. The Commission argues that evidence would show that SCI could have used more efficient equipment and could not have performed certain activities that are reflected in SCI's calculation of damages. Testimony at trial indicated that SCI was aware of work that it could have performed even with utilities on the project site, including new lane construction, dirt and grading work, repaving and widening of the shoulders, and wetlands mitigation planting.

¶20. SCI's summary judgment motion was simply that its damages, as determined by the Court previously, were still undisputed. It did not establish conclusively that mitigation did not exist. Nothing in the facts supporting summary judgment attempt to conclusively establish that mitigation of damages was not a defense.

¶21. SCI admitted in the hearing on the motion for summary judgment that there was proof as to SCI's failure to mitigate damages. However, SCI tried to dismiss this proof as useless because "there was no quantum associated with it." Though the circuit court asserted that "MDOT presented no evidence of the value of SCI's alleged failure to mitigate, did not promise any such evidence, and therefore MDOT did not demonstrate that a genuine issue of material fact exists," this assertion is contradicted by what the Commission provided in responses to interrogatories, which constitute valid summary judgment evidence.

¶22. Jack McSwain, Rick Turner, David Foster, and Sam Peterson were all expected to offer evidence relating to work that SCI could have performed on the Highway 603 project that could have possibly mitigated damages that would be owed by the Commission. Similar testimony was presented by these individuals at trial. Foster and Peterson testified that SCI was able to do productive work on the Highway 603 Project. Turner testified that SCI could have done new lane construction and grading work despite the utility conflicts. The jury was even instructed regarding mitigation of damages. Although the jury verdict does not indicate explicitly that mitigation was a factor in its decision, if such mitigation evidence was sufficient to warrant an instruction to the jury, a factual question had to be present for resolution by the finder of fact. Moreover, the circuit court's determination that the jury verdict was improper reinforces the concept that mitigation might have been a factor that was improperly ignored by the jury. The circuit court recognized that money damages was challenged heavily by the Commission at trial. Given the circuit court's reliance on the

facts revealed at trial, that court could not have concluded that SCI's damages were clear and undisputed.

¶23. We now emphasize that although the circuit court is empowered to grant summary judgment in a trial on damages only, it may only do so if there are no genuine issues of material fact as to damages. Here, there was a conflict as to the amount of damages. In light of its finding that the jury came back with an improper verdict, the circuit court should not have relied solely on that verdict to conclude that SCI was automatically entitled to damages. Genuine issues of fact as to the amount of damages recoverable by SCI existed in this case. Accordingly, we find that the circuit court below erred in assessing damages through summary judgment.

## II. Whether the Circuit Court of Hancock County, Mississippi erred in denying the Mississippi Transportation Commission's Motion for a Judgment Notwithstanding the Verdict.

¶24. The Commission also alleges that the circuit court erred in denying the Commission's motion for judgment notwithstanding the verdict. The standard of review for a denial of a judgment notwithstanding the verdict requires this Court to consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993). If the facts are so overwhelmingly in favor of the appellant that reasonable and fair-minded jurors could not have arrived at a contrary verdict, then this Court must reverse and render. *Id.* On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. *Id. See also Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So. 2d 324, 326 (Miss. 1988).

¶25. The Commission argues that the trial court erred in allowing the jury to award monetary damages, and in the alternative argues that the amount of the jury verdict was contrary to the overwhelming weight of the evidence. The Commission relies on the Mississippi Standards Specifications for Road and Bridge Construction ("Standards"). The Commission refers to Section 105.06, which is basically a "no damage for delay" provision,[(2)] to claim that SCI was not entitled to recover monetary damages. The Commission also argues that SCI was not required to perform "extra work" under Section 105.06, as a result of having to make adjustment to the utility facilities, and therefore could not recover damages as calculated under Section 109.04 of the Standards.

¶26. Despite the apparent commonness of them, this Court has only once addressed and upheld the validity of a "no damage for delay" provision in a construction contract. *Edward E. Morgan Co. v. State Highway Comm'n*, 212 Miss. 504, 54 So. 2d 742 (1951). Contractual no-damage-for-delay clauses are enforceable, though they are construed strictly against those who seek their benefit. *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1221 (Ill. 1994). However, even with a "no damages for delay" clause, many jurisdictions have determined that damages may be recovered for any delay that: (1) was not intended or contemplated by the parties to be within the purview of the provision; (2) resulted from fraud, misrepresentation, or other bad faith on the part of one seeking the benefit of the provision; (3) has extended such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; or (4) is not within the

specifically enumerated delays to which the clause applies. *See, e.g., **Green Int'l, Inc. v. Solis***, 951 S.W. 2d 384, 387 (Tex. 1997); ***United States v. Metric Constructors, Inc.***, 480 S.E.2d 447, 448 (S.C. 1997); ***J & B Steel***, 642 N.E.2d at 1221; *see also* Maurice T. Brunner, Annotation, ***Validity and Construction of "No Damage" Clause with Respect to Delay in Building or Construction Contract***, 74 A.L.R.3d 187, § 2[a] (1976).

¶27. Though the Commission argues that the "no damages for delay" provision precluded a monetary award for breach, the Commission submitted an instruction to the jury which tracked the previously listed exceptions and reflected the instances in which the jury could return a damages award. The jury's verdict and award of damages implicitly established that the "no damages for delay" provision was not a bar to recovery of money damages by SCI for the Commission's breach. The Commission's refusal to grant extensions on a timely basis can reasonably be interpreted as active interference or bad faith and would justify a damages award. Therefore, the "no damages for delay" provision does not preclude a damages award in this case.

¶28. The Commission also argues that the amount of the verdict was contrary to the overwhelming weight of the evidence. However, the Commission only points to variances in testimony, specifically in the amount of SCI's anticipated profits and the difference between SCI's costs and payments received for worked performed. That SCI's testimony may have been contradicted by that of the Commission is, in and of itself, of no consequence. There being substantial evidence to support the jury's finding that a breach existed and that an award was warranted, the circuit court did not err in refusing to grant a judgment notwithstanding the verdict.

### III. Whether the Circuit Court of Hancock County, Mississippi erred in granting SCI, Inc., Motion for a New Trial or for an Additur.

¶29. The Commission alleges next that the circuit court erred in granting SCI's motion for additur. Although the Commission exercised its option to reject the additur and receive a new trial on damages, we will address the Commission's argument to the extent that it claims that the circuit court should not have disturbed the jury award. We apply the following standard in making such a determination.

> ". . .[T]he grant or denial of a motion for a new trial is a matter committed to the sound discretion of the trial court. We reverse only where there has been an abuse of that discretion." "In considering a motion for a new trial, the trial judge in exercising his sound discretion may grant the motion thereby overruling the jury's verdict only where such a verdict is against the overwhelming weight of the evidence or is contrary to the law."

*Allstate Ins. Co. v. McGory*, 697 So. 2d 1171, 1174 (Miss. 1997)(citations omitted). Similarly, this Court consistently has held that the test for deciding whether or not to overturn a granting of additur is whether or not the trial court manifestly abused its discretion. ***Copeland v. City of Jackson***, 548 So. 2d 970, 974 (Miss. 1989).

¶30. In this case, the jury returned a verdict of $2,370,888.85 in favor of SCI. Subsequently, SCI moved for a new trial or additur on the following grounds: (1) during closing arguments, an attorney for the Commission made improper comments; (2) the amount of the judgment was inadequate and was contrary to the overwhelming weight of credible evidence; and (3) the amount of the judgment

evidences that the jury was wrongfully influenced by bias, prejudice and/or passion. The circuit court granted the additur, pursuant to the standards enunciated in Miss. Code Ann. § 11-1-55 (1991).

¶31. We note that SCI presented testimony from Mike Vickery regarding the rental value of depreciated equipment, the value of stock items used by SCI, and lost profits due to the Commission's breach. Further, as was noted by the circuit court below, Jackie Duckworth, the auditor who testified for the Commission, did not include in his estimate of SCI's loss numerous items of damages experienced by SCI. In its brief, the Commission argues that the damages incurred and calculated by SCI were disputed. SCI argued in the hearing on the motion for additur that Vickery's testimony clearly established the damages recoverable by SCI and that Exhibit 83, a summation of the damages, was not contradicted. The circuit court below apparently relied heavily on the fact that Duckworth did not take into account all elements of loss sustained by SCI and therefore concluded that the overwhelming weight of the evidence supported a greater award.

¶32. The circuit court also determined that another basis for an additur was the improper comment made by the Commission's attorney. In *Dykes v. State Highway Comm'n of Mississippi*, 535 So. 2d 1349, 1352-53 (Miss. 1988), this Court reiterated that statements during closing arguments by counsel for the Commission that the department was working for the jurors as citizens and taxpayers constituted reversible error. The following statements were made during closing argument by SCI's attorney:

> Prewitt: Time doesn't pay in this game. Crime doesn't pay. Time doesn't pay in the construction business. This argument that they're going to grant us time sometime later on, it doesn't work. It's like Bosnia, slaughter the innocent, reward the victims. Let the Goliaths fight it out. We ask --

The Commission's attorney then interrupted:

> Lusk: If Your Honor please -- excuse me, Mr. Prewitt -- I let him get by with two that I wanted to complain about. One, he refers to MDOT as the people with the money. I think that is --

> The Court: I haven't heard that, Mr. Lusk.

> Lusk: Sir?

> The Court: I haven't heard that.

> Lusk: Well, I did. Anyway -- all right, maybe they won't do it again. The second is calling us the Goliath. That should allow us to call ourselves the stewards for the taxpayers, which we can't do, and I wouldn't consider doing it."

The circuit court found that the Commission's attorney knowingly made an improper statement in the jury's presence, and it accordingly determined that the verdict was so low as to have been returned by a jury impermissibly influenced by bias, prejudice or passion.

¶33. We do not believe that the damage portion of the verdict was contrary to the overwhelming weight of the evidence, since both the Commission and SCI elicited much testimony regarding the damages incurred by SCI as a result of the Commission's breach. This testimony did conflict, and

resulted in different expectations for each party. Deferring to the discretion of the circuit court in this matter and the evidence presented, we cannot say that the circuit court abused its discretion in originally imposing an additur on behalf of SCI. Nonetheless, we hasten to note our agreement with the circuit court that the statements made by the Commission's attorney could have improperly biased or prejudiced the jury. At the same time, the comment by SCI's attorney referring to MDOT as "Goliaths" in front of the jury probably invited the comment by the Commission's attorney. When attorneys make comments like these, a disservice is done to all clients. Such commentary only inflames the minds of jurors. The statements are not in keeping with the oath taken by attorneys, and they only serve to delay justice. While we will not do so in this case, we reserve the prerogative to impose sanctions, which may include substantial monetary fines, upon attorneys who make such statements in the future.

### IV. Whether the Circuit Court of Hancock County, Mississippi erred in denying the Mississippi Transportation Commission's Motion for Leave to File Third-Party Complaint.

¶34. Finally, the Commission relies upon Rule 14 of the Mississippi Rules of Civil Procedure for its position that the lower court committed reversible error by denying its motion for leave to file third-party complaint against certain utility companies. Both parties direct the Court's attention to *Weyerhaueser Co. v. Wells*, 593 So. 2d 1010, 1012-13 (Miss. 1992). Relying on the comments to Miss. R. Civ. P. 14, the Court recognized that the trial court has discretion to disallow a claim even if it meets the technical requirements of the rule. *Id.* The Court also noted, "It is apparent that the rule does not grant a defendant the right to have a third party claim heard by the court in the same action. The Mississippi trial courts have greater discretion on Rule 14 than the federal courts have." *Id.* at 1012.

¶35. The Commission argues that since SCI's claims are solely related to the location and non-removal of the utility conflicts owned by parties other than the Commission, the third-party utility companies would have been liable to the Commission for all or part of the judgment against it. The Commission argues that allowing it to add the utility companies would have prevented needless additional litigation, thus satisfying the rule's purpose of avoiding "circuitous or duplicative actions."

¶36. The circuit court found that, "The Mississippi Transportation Commission has taken no steps whatsoever, to expeditiously resolve this action, although it noted in its argument that time was of the essence in completing the project in question." As the commentary to Rule 14 states,

> . . .a valid third-party claim that will avoid circuitous or duplicative actions should ordinarily be permitted, unless it would unduly delay the original action. If the court determines that the third-party claim would unduly complicate the original action, it should not disallow impleader; instead, it should permit the claim and order a separate trial as authorized by the rule and by Rule 42(a).

Miss. R. Civ. P. 14 cmt.

¶37. Once again, we defer to the discretion of the circuit court below because it was in the best position to determine whether the third party claim was appropriate. Given the court's determination that the Commission had already delayed the action long enough and that further delay would be prejudicial to SCI, we find that the court did not abuse its discretion by refusing to allow the

Commission to file a third-party complaint.

## CONCLUSION

¶38. Assignments of error II, III, and IV by the Commission are without merit. However, assignment I, alleging that the circuit court erred in granting summary judgment as to the damages recoverable by SCI, does have merit. Because genuine issues of material fact remained as to the amount of damages recoverable by SCI, summary judgment was improper. Accordingly, we affirm as to issues II, III, and IV, reverse as to issue I, and remand this matter for a new trial on damages only.

¶39. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY. PITTMAN, P.J., NOT PARTICIPATING.**

1. However, we also note that the "commencement of trial closes the season for granting motions for summary judgment," and before a motion for summary judgment can be heard, the moving party must comply with Miss. R. Civ. P. 56(c). *Hurst v. Southwest Mississippi Legal Serv. Corp.*, 610 So. 2d 374, 384 (Miss. 1992).

2. The clause states that:

> . . .no additional compensation will be allowed for delays, inconvenience, or damage sustained by [the contractor] due to interference from the said utility appurtenances or the operation of moving them. The engineer's determination that removing, relocating or adjusting of utility appurtenances or failure of others to do so is causing a delay in major facets of construction which normally should be in progress will be considered a delay by the state in the determination of the extension of contract time.. . .