19015

QUALITY CONCRETE PRODUCTS, Inc., Respondent, v. C. Y. THOMASON, and Self Memorial Hospital of whom C. Y. Thomason is, Appellant.

(172 S. E. (2d) 297)

*Messrs. Jefferies & Groves,* of Greenwood, *for Appellant,*

*Messrs. Watson, Ayers & Shaw,* of Greenwood, *for Respondent,*

582

February 6, 1970.

Moss, Chief Justice.

It appears from the record that C. Y. Thomason, a corporation, the appellant herein, contracted with Self Memorial Hospital for the construction of a nursing personnel residence, and Quality Concrete Products, Inc., the respondent herein, was a subcontractor and agreed to manufacture and install precast-prestressed concrete materials in said nursing personnel residence during the course of construction. When the nursing personnel residence was completed, Self Memorial Hospital withheld payments due the appellant, claiming deductions for defective work. Thomason refused to pay Quality for the concrete materials furnished and installed by it, asserting that the materials furnished were inferior and were not properly installed.

The present action is one on contract brought for the purpose of determining what amounts, if any, were due the respondent by the appellant by virtue of two contracts, whereby Quality was to provide and install precast-prestressed concrete materials for the construction of the Self Memorial Hospital nursing personnel residence. The first was a written contract by which Quality agreed to furnish all labor, materials and equipment necessary to complete all precast-prestressed concrete work on the personnel residence, for which work the appellant agreed to pay the sum of $4,560.00. The respondent then alleges that it fully performed the said contract, according to its terms, and that the appellant failed to pay the amount due it under the said written contract.

Quality also alleges that it entered into an oral contract with Thomason whereby it agreed to furnish all labor, materials and equipment necessary to complete all precast

concrete fascia work on the personnel residence for the sum of $7,474.00. The respondent then alleges that it fully performed the said contract, according to its terms, and that the appellant failed to pay the amount due it under the said oral contract.

Thomason, by answer, denied that it was indebted to Quality because the materials provided by Quality were inferior and not acceptable to Self Memorial Hospital and were rejected by it; that Quality abandoned the project and authorized Thomason to correct and complete the work at its own expense and deduct this amount from the contract price, and, that said costs exceeded the amount alleged to be due Quality. These defenses, *inter alia,* were pled as to each of the two causes of action. In addition, Thomason claimed a setoff in a sum equal to any amounts allegedly due Quality and counterclaimed alleging that it expended $7,-693.10 in the correction of Quality's materials and workmanship, thus causing Quality to be indebted to Thomason in the sum of $1,126.60 in excess of the claim of Quality on the oral contract and demanded judgment for the total cost of the corrective work.

This case came on for trial before The Honorable Robert W. Hayes, Presiding Judge, and a jury, at the 1968 September Term of the Court of Common Pleas for Greenwood County and resulted in a verdict in favor of Quality in the sum of $10,199.70. This sum represented the total of the two contract prices, as Quality admitted to certain back charges during the course of the trial. Before the case went to the jury, the trial judge held that the respondent was entitled to recover as a minimum the sum of $3,530.90, and a maximum amount, under the two contracts, of $10,199.70. Thomason agreed to the maximum figure from which its proven deductions, if any, were to be made. Thomason contended that Quality did provide certain fascia materials and services in the installation thereof but asserted that it expended $6,668.80 correcting their defective materials and

workmanship and was entitled to a setoff against the maximum amount recoverable under the two contracts.

It is the position of Thomason that the court erred in failing to grant its motions for a directed verdict and for judgment *non obstante veredicto,* in the sum of $6,668.80, on the ground that the only reasonable inference to be drawn from all of the evidence was that said amount was a proper offset against the alleged contract price for materials and services rendered to it by Quality.

It appears from the testimony in behalf of Quality that when Thomason obtained the contract to build the personnel residence at Self Memorial Hospital, that it submitted bids to Thomason for the precast-prestressed concrete materials and also for the fascia. The bid for the fascia was in the amount of $7,474.00. A written contract was made, as is heretofore stated, concerning the precast-prestressed concrete materials but no contract was entered into by the parties for the fascia. Almost a year later Thomason did send a contract for rubbed finished fascia to Quality but such was not signed by it because Quality could not perform it within the time provided thereby. Thereafter, the project manager who was in charge of the construction of the personnel residence for Thomason, went to the plant of Quality in Greenville and stated because he had to meet a certain schedule he thought he could live with fascia with a form finish, which took much less time to produce than the rubbed finished fascia. A witness for Quality testified that the proposed contract price for rubbed finished fascia was $7,474.00 but after the project manager for Thomason agreed to a form finish fascia, the alleged contract price was reduced by $907.50.

As to the type of fascia to be furnished by Quality to Thomason under the contract, it was testified by a representative of the respondent, as follows:

"We agree to furnish them a panel with a form finish, just as it came out of the form, that they would put whatever finish the architect ultimately decided to accept, and that any work between the form finish and what it takes to receive

the finish the architect agreed to take they would do themselves."

This witness testified that a panel with a form finish is just as it comes out of the mold or form, with no touch up work done to its surface whatsoever and whatever appearance is built into it from the form remains there. Such panel would show the wood marks and steel joint marks on it and there would be considerable imperfection in the finish, including any ripples that were in the form in which the said panel had been molded.

As to the performance of the contract by Quality, we quote from the testimony of a witness for Quality as follows:

"Q. Did you supply the type of fascia panels that was ordered from you by C. Y. Thomason Company?

"A. Yes, sir.

"Q. Did you supply the fascia panels with the finish on them ordered by C. Y. Thomason Construction Company?

"A. We did supply a a form finish, as agreed, yes, sir.

"Q. That was the type ordered from C. Y. Thomason Company?

"A. Yes, sir.

"Q. All right, sir. Have you been paid by C. Y. Thomason Construction Company for these fascia panels?

"A. Not one dime."

\* \* \* \* \* \*

"Q. There was never any doubt in your mind but that it was good quality stuff?

"A. For what he bought, yes, sir. He bought a form finish panel, and for a form finish panel he got a reasonable form finish."

It is the position of the appellant that the materials provided by the respondent as fascia were inferior and not acceptable to Self Memorial Hospital. Upon this being called to the attention of Quality, it wrote a letter to Thomason under date of July 18, 1966, which, in part, stated:

"In our effort to speed up this fascia work, we did not produce the quality job that either you or we wanted. This was a mistake on our part. As per our conversation, we are willing for you to have corrective work done to this fascia and deduct the cost from our price. * * * "

The appellant contends that it completed the corrective work authorized by Quality at a cost of $6,668.80. It is the further position of the appellant that the evidence is uncontradicted that it was authorized to do the correcive work and the amount expended by the appellant therefor was as is above stated. It is now asserted that the trial judge erred in not granting the appellant's motion for a directed verdict as to the amount it expended in correcting the respondent's defective materials and work.

As will be noted from the letter above quoted, Quality authorized corrective work done to the fascia and to deduct the cost from its price "as per our conversation". The letter from which the above quote was taken was written by F. Towers Rice, President of Quality. He was called as a witness and testified as to his conversation with C. Y. Thomason with reference to the corrective work to be done to the fascia, and he stated that in the said conversation he authorized only corrective work to be done to the fascia by Alton Waterproofing, otherwise known as Mabie-Belle Corporation, as long as Quality was informed as to the cost. Quality allowed a credit of $766.80, this being the charges for the corrective work that Alton Waterproofing had done. Thomason was given credit for this amount when the trial judge computed the maximum amount that Quality could recover under the two contracts.

There was also testimony that after the letter of July 18, 1966, Quality did perform additional work on the fascia. We quote from the testimony the following:

"Q. Did you replace all or any panels you were requested to replace by anybody connected with C. Y. Thomason Company on Self Memorial Hospital?

"A. Yes, sir, each time they ever made a request.

"Q. Did they ever ask you to replace a panel that you failed or refused to replace.

"A. They never asked me to replace one that I refused to replace. They asked me to replace one that failed to get replaced because when I sent it down there they had it put in a different position."

\* \* \* \* \* \*

"Q. What type of work did you do?

"A. We rehung eight of the panels that they said they wanted taken down. We kept a crew of some five men down there two weeks."

\* \* \* \* \* \*

"Q. Did you supply the type and quality of work C. Y. Thomason Company ordered from you?

"A. We did supply them a form finished panel like they bought.

"Q. Did you do any work after these panels were put up to bring them up above a form finish?

"A. Yes, sir."

\* \* \* \* \* \*

"Q. You also stated that you did additional work after the panels were in place?

"A. Yes, sir.

"Q. Why did you do this work, additional work?

"A. Because I was told that if we could get the panels acceptable to the architect that we would receive the money for the prestressed contract and for the fascia contract. We continued to work trying to obtain our money."

The oral contract for the furnishing by Quality of the form finished fascia to Thomason was entered into by one Ballentine, who was at the time project manager for the construction of the personnel residence. Ballentine was present at the trial of this case but was not called to refute the testimony in behalf of Quality as to what the contract was between the parties. Ballentine was succeeded, on July 25, 1966, by one J. T. Cox as project manager. He testified that the fascia panels furnished by Quality were chipped on

the edges, irregular, and were bowed and warped and others had knots or real rough places on them to the extent that they would have to be ground off. He also testified that the repairs to the panels were made by Thomason. Cox admitted that Quality replaced the ones that he asked them to replace.

There was reply testimony in behalf of Quality that they poured the concrete fascia in the particular forms on instructions of Ballentine when he bought them. There was further testimony that some of the grooves down the front of the panels were out of line and these were corrected by Quality at its own expense.

It is our conclusion, under the record here, that it was for the jury to determine what the contract was between Quality and Thomason and whether Quality performed the contract according to its terms. It was also for the jury to determine whether the materials provided by Quality were inferior in quality and not according to the contract.

It follows that the appellant was not entitled to a directed verdict in its favor on the grounds that the cost of repairing and correcting the fascia supplied by the respondent was authorized by it and the amount expended thereof was uncontradicted.

The appellant was not entitled to a new trial, as it contends, on the ground that the verdict of the jury was arbitrary, capricious and contrary to the evidence. We again point out that the appellant agreed that the sum of $10,199.70 was the correct maximum amount that the respondent could recover under the two contracts, in the event that the appellant did not prove its entitlement to a setoff because of inferior work on the part of the respondent. Under the disputed facts in this case there is sufficient evidence to support the verdict of the jury.

The appellant further contends that it was entitled to a directed verdict for the amount of its cost for the correc-

tion of the defective work done by the respondent by virtue of the abandonment of the work by it.

The abandonment of a contract is a matter of intention to be ascertained from the facts and circumstances surrounding the transaction from which the abandonment is claimed to have resulted. An abandonment of a contract need not be express but may be inferred from the conduct of the parties and the attendant circumstances. 17 Am. Jur. (2d), Contracts, Section 484, at page 954.

The appellant relies on the letter of Quality to Thomason, under date of July 18, 1966, hereinabove quoted, to show abandonment of the work by the respondent. The appellant asserts that after said date the respondent did not assume any further responsibility for the work. There is evidence by witnesses for the respondent and the appellant that after the date of the said letter, the respondent replaced several fascia panels and had workmen on the job several weeks completing all corrective work that it was requested to do by the appellant. There was no evidence in this record from which it could be inferred that the respondent abandoned its contract. It follows that the appellant was not entitled to a directed verdict on the ground that the evidence showed that the respondent had abandoned its contract.

The appellant charges the trial judge with error in refusing to charge its request "to the effect that the respondent had abandoned its contract with the appellant and as a result thereof should be denied recovery of the reasonable value of such work as was provided before the abandonment of the undertaking."

The trial judge very properly refused to charge as requested. If he had told the jury that the respondent had abandoned its contract, such would have been a charge on the facts. Our constitution prohibits such a charge.

We have held that instructions to the jury should be confined to the issues made by the pleadings and the facts developed by the evidence in support of those

issues. No instructions should be given by the court at the request of counsel which tenders an issue that is not supported by the evidence. *Hendricks v. American Fire & Cas-Co.*, 247 S. C. 479, 148 S. E. (2d) 162, 25 A. L. R. (3d) 671. There is no evidence offered by the appellant from which it could be concluded that the respondent abandoned its contract.

The appellant charges the trial judge with error in permitting certain of the witnesses for the respondent to testify in reply, over objection, as to matters which it asserted related to the respondent's case in chief and as to new matter which was not in reply to appellant's evidence.

A witness for the appellant testified that workmen for respondent were told to hang the fascia in a straight line and not by the brick line. In reply, over objection, a witness for the respondent was permitted to testify that as a result of a telephone conversation the foreman for Quality was authorized to abandon setting the fascia panels by string and to set such by the brick line. This testimony was admissible as being in reply to that given in behalf of the appellant.

As is heretofore stated, Thomason, while the respondent was putting up its evidence in chief, offered in evidence a letter to Thomason signed by F. Towers Rice, president of the respondent, which is hereinbefore quoted. Thereafter, J. T. Cox, project manager for the appellant, testified that the aforesaid letter authorized Quality to effect all the repairs to the fascia and it would accept the back charges therefor. In reply, the respondent called F. Towers Rice as a witness, and he was asked as to what corrective work was authorized "as per our conversation". Objection was made by the appallent on the ground that such was not in reply and should have been offered in chief by the respondent. The objection was overruled and the witness was permitted to testify that the corrective work authorized "as per our conversation" was only the work to be done by

Alton Waterproofing Company. It is our view that this testimony was properly admitted in reply.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.