578 So.2d 750 (1991)
NEWBERRY SQUARE DEVELOPMENT CORPORATION, Diversified Centers, Inc., and Robert L. Miller, Appellants,
v.
SOUTHERN LANDMARK, INC., and Aetna Casualty & Surety Co., Appellees.
No. 89-1363.
District Court of Appeal of Florida, First District.
March 29, 1991.
Rehearing Denied May 21, 1991.
*751 Stephen B. Rakusin, of Rakusin & Ivey, Gainesville, and S. Larue Williams, of Kensey, Vincent & Pyle, Daytona Beach, for appellants.
Philip N. Hammersley, of Trawick, Hammersley & Valentine, Sarasota, for appellees.
WENTWORTH, Senior Judge.
Appellants (hereinafter Newberry Square)[1] seek review of an order by which appellees (hereinafter Southern Landmark) were awarded damages in a construction contract dispute. We find that the only point which requires reversal is the allowance of damages, in Southern Landmark's *752 award, for two of Southern Landmark's subcontractors. We reverse the order as to this portion of the total damages, and otherwise affirm.
Southern Landmark entered into a contract to construct a shopping center for Newberry Square. The contract specified completion dates for Southern Landmark's work. When the work was not completed until after the scheduled dates Newberry Square withheld payment of the outstanding contract balance and refused to pay the full amount of Southern Landmark's final pay requisition. Southern Landmark thereafter filed an action seeking recovery which included damages related to delays which it contended were attributable to Newberry Square.
Although the contract contained a "no damage for delay" clause which purported to limit Southern Landmark's available remedy to an extension of time, such a clause does not preclude recovery for delays resulting from a party's fraud, concealment, or active interference with performance under the contract. See United States for the Use & Benefit of Seminole Sheetmetal Company v. SCI Inc., 828 F.2d 671 (11th Cir.1987); C.A. Davis Inc. v. City of Miami, 400 So.2d 536 (Fla. 3d DCA 1981), pet. for review dismissed 411 So.2d 380 (Fla. 1981). And despite such a clause damages may be awarded upon a "knowing delay" which is sufficiently egregious, see Southern Gulf Utilities Inc. v. Boca Ciega Sanitary District, 238 So.2d 458 (Fla. 2d DCA 1972), or upon the willful concealment of foreseeable circumstances which impact timely performance. See McIntire v. Green-Tree Communities Inc., 318 So.2d 197 (Fla. 2d DCA 1975). These exceptions to the no damages clause are generally predicated upon an implied promise and obligation not to hinder or impede performance. See Seminole Sheetmetal, supra. In the present case there was evidence that Newberry Square delayed in providing approved plans and specifications, and in providing plans and specifications which incorporated desired changes. There was also evidence that Newberry Square delayed in executing change orders and required that construction not proceed without such orders. And it was indicated that Newberry Square repeatedly failed to make timely payments required by the contract. This course of conduct was established not only as to the Newberry Square project, but also as to two other construction projects involving these parties. And Southern Landmark's president testified that appellant Robert Miller had threatened "that he would break me before he'd pay... ." There was thus adequate evidence to present a jury question as to whether Newberry Square actively impeded, or willfully and knowingly delayed, Southern Landmark's ability to timely perform under the contract, and in these circumstances the "no damage for delay" clause does not preclude Southern Landmark's recovery.
Newberry Square argues that Southern Landmark should not have been allowed to present evidence as to the delays and difficulties which occurred on the other two construction projects which were not a part of the contract in this case. However, all three projects were bid during the same month, and it was indicated that the procedures in administering the contracts, including the payment process and change orders, were identical. Evidence was presented as to various delays which Newberry Square occasioned on the other two projects, and the manner in which these difficulties impacted Southern Landmark's ability to perform under the contract in the present case. The evidence was pertinent to Newberry Square's motive, knowledge, and intent and thus admissible under section 90.404(2)(a), Florida Statutes, as it reflected the totality of the circumstances and the course of dealing between the parties as related to the dispute in the present case.
Newberry Square also argues that it should have been allowed to present the testimony of an accountant who performed a cash flow analysis of payments on the construction project in this case. But it was indicated that this analysis did not include all overhead costs, and did not consider the impact of payment delays from the other projects. And similar testimony *753 was presented by two other witnesses who suggested that Southern Landmark had not adequately paid their subcontractors when payments were made to Southern Landmark. Given the questionable accuracy of the accountant's cash flow analysis, and the presentation of similar evidence by other witnesses, the exclusion of the accountant's cash flow testimony does not constitute reversible error.
During the presentation of Southern Landmark's evidence a witness used a chart titled "Summary of Amounts Claimed." Newberry Square asserts that the chart was also used during argument by Southern Landmark's counsel, although the record is not entirely clear in this regard. The chart contained figures reciting the various amounts claimed as damages. One of the items was modified in accordance with the concession of Southern Landmark's president that certain damages should be excluded. After the jury retired to begin deliberations it requested that the court provide a written breakdown of the damages claimed. Counsel for Newberry Square suggested that it would be "inappropriate ... to provide the jury with any ... information," and expressed a preference that the chart "not go in" to the jury room. The court then returned the jury to the courtroom where the chart was displayed, and advised the jury: "this is not evidence. This is a chart ... used to explain to you what their damage  what claims there are. You should not use this chart as evidence of damage, just what their claims of damage are." The court explained to the jury why one of the figures on the chart had been altered, and noted that the bottom-line figure needed to be adjusted accordingly. The jury thereafter returned to the jury room and continued deliberations.
Louisiana-Pacific Corp. v. Mims, 453 So.2d 211 (Fla. 1st DCA 1984), suggests that a chart used during argument "must be promptly removed from the jury's observation" when the argument is concluded. See also, Ratner v. Arrington, 111 So.2d 82 (Fla. 3d DCA 1959). But in Mims the jury was allowed to take the chart into the jury room as a court exhibit, whereas in the present case the chart was not allowed into the jury room. Rather, the jury was merely permitted to again view the chart, which had also been used by a witness during testimony, for approximately five minutes in the courtroom, after which it remained outside the jury's view. The present case is also unlike Ballard v. W.E. Rowe, 234 S.E.2d 890 (S.C. 1977), where a blackboard display of claims was taken into the jury room. In Ballard the blackboard display had been utilized in response to a jury request, and then additional claims were displayed upon a further request initiated by the trial court. The appellate court cautioned against "any intimation" by the trial court which might influence the minds of the jurors. In the present case the trial court clearly informed the jury that the chart was merely a summary of amounts claimed, and should not be considered as evidence. It has not been shown that the trial court's actions imperiled the fairness of the proceeding by prejudicing the minds of the jurors, as has been required for reversal in cases such as Pennsylvania Thresherman v. Koltunovsky, 184 So.2d 450 (Fla. 3d DCA 1966). The brief and limited use of Southern Landmark's claim chart in response to the jury's inquiry does not create the necessary inference of prejudice, and does not constitute reversible error.
Southern Landmark's damage award included amounts for two subcontractors ($39,000 for Newsom Brothers, and $141,000 for Home Electric). Such claims, when a contractor sues a project owner on behalf of a subcontractor, have been allowed when the contractor would be liable to the subcontractor, and in situations such as public contracts where the subcontractor is unable to establish an express or implied contract with the project owner. See Farrell Construction Co. v. Jefferson Parish, 693 F. Supp. 490 (E.D.La. 1988); Public Health Trust of Dade County v. M.R. Harrison Construction Corp., 454 So.2d 659 (Fla. 3d DCA 1984); see also, Wexler Construction Co. v. Housing Authority *754 of Norwich, 149 Conn. 602, 183 A.2d 262 (1962). But the present case does not involve a public contract, and Southern Landmark is made contractually liable to the subcontractors "only to the extent" that Newberry Square is liable to Southern Landmark. The circumstances of this case thus do not accord with the standard announced in Farrell, and the other cited cases, for such claims. And as a matter of special damages peculiar to this case, the claims for the subcontractors' losses should have been specifically pleaded. See Fla.R. Civ.P. 1.120(g); cf., Safeco Title Ins. Co. v. Reynolds, 452 So.2d 45 (Fla. 2d DCA 1984). While Southern Landmark's complaint refers to additional expenses for material, labor, and services, and notes that litigation was filed by subcontractors, it does not make any more specific request for damages pertaining to subcontractors' losses. Special damages should be pleaded with particularity sufficient to apprise the opposing party of the nature of the special damages claimed. See Augustine v. Southern Bell Telephone & Telegraph Co., 91 So.2d 320 (Fla. 1956); see generally, Fla. Power Corp. v. Zenith Ind. Co., 377 So.2d 203 (Fla. 2d DCA 1979), cert. denied 388 So.2d 1120 (Fla. 1980). Although Southern Landmark attempted in its pretrial compliance statement to increase the claim to encompass the subcontractors' losses, this document was filed less than three weeks before trial commenced and does not serve as an amendment of the pleadings. Indeed, in its pretrial statement Southern Landmark acknowledged that Newsom Brothers' and Home Electric's losses had not been included in Southern Landmark's claim. The failure to specifically plead a claim for these damages, and the absence of a basis for presentation of these claims, precludes the inclusion of such damages in Southern Landmark's award.
The order appealed is reversed insofar as the subcontractors' losses were included in Southern Landmark's damages. The order is otherwise affirmed, and the cause remanded.
MINER, J., concurs.
ERVIN, J., concurs and dissents w/written opinion.
ERVIN, Judge, concurring and dissenting.
I concur in all aspects of the majority's opinion except those relating to the trial court's refusal to permit testimony regarding how Southern Landmark used construction funds following payment from Newberry Square, the admission of hearsay statements made by an employee of Southern Landmark regarding what other employees told him about problems on the job, and the lower court's comments on and revisions to Southern Landmark's damages chart in the presence of the jury after jury deliberations had begun. If the first two issues were the only errors which occurred at trial, I could concur with the majority in affirming under the theory that such errors were only harmless. Because, however, I consider that the third issue requires reversal and remand for new trial, I would reverse as to the former two as well.
As to the first issue, after the trial court ruled inadmissible certain evidence pertaining to the manner in which appellant had paid construction funds to Southern Landmark on the Newberry Square project, the appellants proffered Ira Baron as an expert witness. Baron testified that he had examined and analyzed various financial data belonging to Southern Landmark, including cancelled checks, general ledgers, cash receipt journals, and check vouchers, and concluded therefrom that for the final eight months of 1985, and the first seven months of 1986, Southern Landmark had been overpaid in excess of $160,000. As such, Baron's testimony challenged Southern Landmark's theory that it could not pay its subcontractors because Newberry Square was not making prompt payments to Southern Landmark. The purpose of that testimony was clearly relevant to establish that Southern Landmark was receiving payments from Newberry in excess of that needed on the project and at the same time was not paying its subcontractors. Because the evidence concerned Newberry Square's theory of defense, it complied *755 with the definition of relevant evidence,[2] and was therefore admissible.
Appellees defend the trial court's decision to exclude such testimony on the ground that Baron's cash-flow analysis was incomplete in that it neither took into consideration cash-flow problems which existed at the other two construction projects, nor contemplated the contractor's home office overhead. In my judgment this argument goes more to the weight of the submitted evidence  not its admissibility. See Gershanik v. Department of Professional Reg., Bd. of Medical Examiners, 458 So.2d 302 (Fla. 3d DCA 1984), review denied, 462 So.2d 1106 (Fla. 1985); Nat Harrison Assocs., Inc. v. Byrd, 256 So.2d 50 (Fla. 4th DCA 1971). Any weakness in the underlying basis of Baron's opinion testimony could have been effectively brought to the jury's attention during cross-examination and later during the arguments of appellee's counsel. But his testimony for that reason alone should not, in my judgment, have been the cause for its exclusion.
Moreover, in determining whether the evidence was admissible, the trial court should have considered the counterbalancing factors outlined in Section 90.403, Florida Statutes (1989). Although a trial court enjoys wide discretion in deciding whether to admit or exclude relevant evidence pursuant to section 90.403, Dale v. Ford Motor Co., 409 So.2d 232 (Fla. 1st DCA 1982), such discretion is not unlimited. As section 90.403 expressly provides, the discretion to exclude relevant evidence may be exercised only if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence." (Emphasis added.) In commenting upon Federal Rule of Evidence 403, after which section 90.403 is patterned, Wright and Graham point out that "the discretion under Rule 403 is far from a license for free-wheeling exclusion; it carefully delineates a balancing test that must be applied before the evidence can be excluded." 22 C.A. Wright & K.W. Graham, Jr., Federal Practice and Procedure § 5166, at 74 (1978). The balancing process required by section 90.403 was analyzed in the following terms by a wellknown commentator:
In weighing the probative value against the unfair prejudice, it is proper for the court to consider the need for the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction.
1 C.W. Ehrhardt, Florida Evidence § 403.1, at 103 (2d ed. 1984).
In my judgment appellant's need for the opinion evidence outweighed any adverse consideration. At the very minimum it clearly was not substantially outweighed by any of the countervailing factors listed in section 90.403. Baron was the only witness who actually testified as to the amount of overpayment, stating that as of January 31, 1986, Southern Landmark received $228,230 more than it paid out, and that during the seven months ending July 31, 1986, Southern Landmark received $1,881,000 and paid out $1,879,000. This testimony went to the very crux of appellants' defense, and therefore had substantial probative value.
Appellees finally argue that the cash-flow analysis was offered in the face of undisputed evidence that each of the payments to the contractor on the project were made following a certification by the architect that the contractor was due the amount, and, pursuant to the contract documents, that the architect's certificate for payment was conclusive. I agree with appellant that such certificates for payment would simply show how much the contractor had been paid, but would not show whether Southern Landmark actually used such amounts on the Newberry Square project.
Turning next to the issue relating to hearsay testimony, Southern Landmark's employee, Ed Johnson, testified that he had *756 been informed that Robert Miller, the sole shareholder and chief executive officer of Newberry Square, had failed to timely pay design professionals. He also stated that the civil engineer had advised him that he was owed money. Appellee asserted that this hearsay testimony was harmless because it was cumulative. On the contrary, the only testimony which corroborated Miller's was that of an architect who testified that he had delayed paying the electrical engineer, because he was not being paid promptly by Miller. Under the circumstances, it cannot be said that Johnson's hearsay testimony was cumulative.
As to the third issue, the majority omits the fact that the trial judge, in the presence of the jury, crossed out the item listed on Southern Landmark's damages chart as the "amount due under the contract[,] $481,132.28," and replaced it with the figure $478,470.32. As he did so, the judge made the following comments to the jury: "What I did at the top [of the chart], is the initial claim was four eighty-one what have you, and subsequent testimony reduced that to $478,470.32[,] and the bottom number [the total sum for all items of damages claimed on the chart] needs a deduct, too... ." (Emphasis added.)
Despite the court's cautionary instruction to the jurors that the chart should not be considered as evidence, the court's other comments could have no effect other than to convey the impression that the court tacitly approved the revised figure. This assumption is supported by the fact that the amount which the jury awarded to Southern Landmark for this item of damages corresponded precisely with the court's revised figure.
The majority, in affirming as to this issue, focuses upon distinguishing facts in other cases in which  unlike the present case  the jurors were permitted to take exhibits into the jury room. The majority also emphasizes that the trial judge below specifically instructed the jury that the chart should not be considered as evidence. These distinctions, in my judgment, are not compelling when it is considered that the jurors were not only permitted to view the chart in the courtroom, but were also provided with pads and pencils.
Implied comments on the evidence, such as those made here, have been continuously disapproved in a substantial body of case law. For example, in Louisiana-Pacific Corp. v. Mims, 453 So.2d 211 (Fla. 1st DCA 1984), this court reversed a judgment in which the trial court permitted a list of damages to be taken to the jury room as a court's exhibit, notwithstanding that the trial judge cautioned the jury that the chart was not evidence. In so holding, we observed that "[t]he designation of the chart as a court's exhibit, lending to it the sanction and influence of the judge, is an error far more grievous than leaving it in the view of the jury during phases of the trial for which its use is unnecessary." Id. at 212-13.
The effect that a trial judge's comments, express or implied, may have on a jury's verdict was further alluded to in Ballard v. Rowe, 268 S.C. 517, 234 S.E.2d 890 (1977)  a case this court relied upon in Mims  in which the jury, during deliberations, requested a list of the items claimed by the plaintiff. Both the plaintiff and the defendant listed their claims on a blackboard and the court permitted the jury to view the lists and take them into the jury room. The Supreme Court of South Carolina reversed and remanded for new trial, stating,
Although the judge admonished the jury that the matters written on the blackboard (which were the equivalent of an exhibit) were merely the claim or contention of the general contractor, we must keep in mind the fact that the presiding judge has great influence upon the minds of the jurors, who are quick to seize upon any intimation by [word] or gesture from him.
Id. 234 S.E.2d at 892.
Finally, in Steele v. United States, 222 F.2d 628 (5th Cir.1955), the trial court permitted the jury to take into the jury room two government exhibits which were compilations of the alleged income of the defendant, who had been charged with tax evasion. The court reversed the judgment of conviction as to this issue and remanded, stating:
[W]e agree with appellant that the jury could scarcely consider this act of the court [sending the exhibit to the jury *757 room] other than as investing these exhibits with an air of credibility as demonstrative evidence over and above, and independent of, the evidence which they purported to summarize and embody, with the undoubted effect of completely erasing from the minds of the jury, as to the so-called exhibits, any therapeutic effect the charge to the jury that the exhibits were not original evidence and were not binding upon the jury, was intended or calculated to have.
Id. at 630.
The above cases clearly demonstrate the persuasive influence which an exhibit, prepared simply to support a party's theory of the case, may have upon jurors, once it is allowed to go with them into the jury room during their deliberations. The prejudicial effect is no less when a trial judge revises an item of damages on a chart which has no evidentiary value and comments that he has done so in order that the item may be conformed to the evidence. In both cases the items are invested with an aura of credibility. And, in the latter case, the item may be additionally perceived in the jurors' minds as having been clothed with judicial approval.
For the above reasons I would reverse the judgment and remand the case for new trial.
NOTES
[1] Appellant Diversified Centers is Newberry Square's parent corporation, and appellant Robert Miller is the sole shareholder of both entities. The parties agreed below that appellants are the same for the purpose of liability.
[2] "Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (1989).