2264

CITY OF YORK, South Carolina, Respondent v. TURNER-MURPHY COMPANY, INC., Mayes, Sudderth and Etheredge, Inc., and the American Insurance Company, Defendants, Of Whom Mayes, Sudderth and Etheredge, Inc., is Appellant.

(452 S.E. (2d) 615)

Court of Appeals

*Charles E. Carpenter, Jr., Michael A. Pulliam,* and *Deborah Harrison Sheffield, Richardson, Plowden, Grier & Howser,* Columbia, *for appellant.*

*William M. Brice, Jr.,* York, and *Grady L. Patterson, III, Quinn, Arndt, Patterson & McIntosh,* Columbia, *for respondent.*

Heard Oct. 5, 1994.

Decided Dec. 12, 1994; Reh. Den. Jan. 26, 1995.

HOWARD, Acting Judge:

This case involves the construction of a waste water treatment facility for the City of York. The jury returned a verdict for the city against Mayes, Sudderth and Etheredge, Inc. (Mayes, Sudderth), the project engineer, on a negligence claim. The company appeals the denial of its trial motions. We reverse.[1]

In 1976 the City of York contracted with Mayes, Sudderth for the design of a waste water treatment plant. As part of this contract, Mayes, Sudderth agreed to provide a resident inspector for the project during construction for "detailed inspection of the work for general compliance with contract documents." Concrete for a wall in the filter structure, the "gallery wall," was poured in 1980.[2] The plant became operational in 1981 before construction was complete. During this time, the resident inspector for Mayes, Sudderth discovered

---

[1] The city also sued the contractor, Turner Murphy Company, Inc., and its surety, American Insurance Company. The verdicts against these parties are not at issue.

[2] The gallery wall is 24 feet high, 55 feet long, and varies 12 to 18 inches in thickness.

leaks in the gallery wall, which he noted on "punch lists" for the contractor to fix. These leaks were the result of "honey-combing," which became apparent when the forms were stripped off. They were repaired before the plant was accepted by the city in 1983. In May of 1984 a hole developed in the gallery wall causing drainage of the four filter chambers. The city retained an engineering firm to examine the wall. Their nondestructive tests proved inconclusive. Therefore, the firm was forced to perform destructive tests called "coring," which resulted in cutting holes in the wall. After core samples were taken, the firm concluded there were extensive voids in the wall and recommended the wall be replaced.

The city alleged Mayes, Sudderth was negligent in failing to adequately observe, inspect, and supervise the pouring of the concrete during construction and failing to ensure conformance with the plans and specifications. The jury returned a verdict in favor of the city. Mayes, Sudderth contended in trial motions it was entitled to judgment as a matter of law because the city did not present any expert testimony that it deviated from the professional standard of care. In denying the motions, the trial court held the common knowledge exception was applicable. We reverse.

In a professional negligence cause of action, the plaintiff must prove the professional failed to conform to generally recognized and accepted practices in the profession. If the plaintiff cannot meet this burden, then the professional cannot be found liable as a matter of law. *Doe v. American Red Cross Blood Servs.*, 297 S.C. 430, 377 S.E. (2d) 323 (1989). Where professional negligence is alleged, expert testimony is usually necessary to establish both the standard of care and the professional's deviation from that standard, unless the subject matter is within the area of common knowledge and experience of the layman so that no special learning is needed to evaluate the professional's conduct. *Hoeffner v. The Citadel,* — S.C. —, 429 S.E. (2d) 190 (1993).

The only issue on appeal is whether the trial court erred in applying the common knowledge exception to the requirement of expert testimony under the facts of this case. At trial, the city established a standard of professional care for Mayes, Sudderth through expert testimony. The resident inspector of Mayes, Sudderth had a duty to notify the city of any noncon-

forming or defective work during the construction of the gallery wall. If the Mayes, Sudderth inspector had notice of any nonconforming or defective work so that he knew or should have known about any problem with the wall, and he failed to report such problem, then Mayes, Sudderth breached the applicable standard of care.

Though the experts testified as to the standard, they did not affirmatively testify that Mayes, Sudderth breached this standard. Instead, the city relied on the common knowledge exception to avoid a directed verdict. The city claims it is within the common knowledge of the jury to identify whether Mayes, Sudderth had sufficient notice of the wall problem during construction which it failed to report. We disagree.

The application of the common knowledge exception depends on the facts of each case. *Sharpe v. South Carolina Dep't of Mental Health*, 292 S.C. 11, 354 S.E. (2d) 778 (Ct. App. 1987). It is undisputed that the only way the city's investigative engineering firm could discover the extensive voids in the wall in 1984 was to perform destructive tests. Therefore, these voids in the wall were latent defects. Though there was testimony that problems were encountered during the cement-pouring process, there is no testimony to establish that a reasonable and prudent engineer would anticipate voids in the wall under these circumstances. The city argues the jury need only find the inspector had reason to know of a problem, not to know the full extent of the problem. However, this reasoning requires the jury to speculate on Mayes, Sudderth's capability to anticipate a latent defect. Applying a common-sense standard, we find this expectation antithetical. If the problem could only be ascertained by "coring" the wall, the jury could not possibly extrapolate from the coring test results that Mayes, Sudderth should have known of a defect at the time of construction. That capability requires professional knowledge of construction methods and procedures to determine whether an engineering company should have anticipated this problem based upon difficulties encountered during the construction process. We also note Mayes, Sudderth reported the defects it could see, which were subsequently repaired to the city's approval. Absent expert testimony that Mayes, Sudderth should have known about the latent defects during construction, it was entitled to judgment as a matter of law.

The city supports its position with cases from other jurisdictions which have distinguished negligence in preparing plans from negligence in supervising plans. These cases have found expert testimony is not necessary to show negligence in merely supervising the plans. Because the common knowledge exception turns on the particular facts of each case, we will not adopt such a bright line test in its application. The cases are distinguishable. In *Jaeger v. Henningson, Durham & Richardson, Inc.*, 714 F. (2d) 773 (8th Cir. 1983), an architectural firm contracted to prepare plans and specifications for an office building. The contract further required the firm to compare specifications noted on shop drawings to assure conformity with the plans. The firm failed to notice a shop drawing mistake in the gauge of steel required, which was not as strong as the gauge of steel called for under the specifications. *Id.* at 775. Expert testimony established the building would not have fallen if the correct steel had been used. However, the plaintiff presented no expert testimony either on the standard of care or deviation from that standard. The court applied the common knowledge exception because any layman could observe the firm failed to notice the mistake which caused the steel structure to collapse. *Id.* at 776; *see also Milton J. Womack, Inc. v. House of Representatives of the State of La.*, 509 So. (2d) 62 (La. Ct. App.) (holding an architect liable without expert testimony for his failure to discover and consider a structural steel brace in renovation plans), *cert. denied*, 513 So. (2d) 1209 (La. 1987).

In *Seiler v. Levitz Furniture Co. of the Eastern Region, Inc.*, 367 A. (2d) 999 (Del. 1976), an architect was held liable to an owner for failing to take potential floods into consideration in the design of a building. The court held expert testimony was not required because there was evidence that the building was built at an elevation two feet below the height of previous flood waters from a nearby stream, without any type of waterproofing. The architect acknowledged the requirement to consider flooding as a part of the topographical considerations in the design, and he testified that he had previously investigated the possibility of flooding. Under those circumstances, the trial judge held one could determine without expert testimony that the architect had been put on notice of flooding and failed to design the building properly. *Id.* at 1008-09.

In each of these cases, the issue could be understood without assistance from an expert. Common sense teaches that a working specification calling for 10 gauge steel is different from 14 gauge steel. Common sense teaches that a structural steel brace should be considered when drafting renovation plans. Likewise, common sense allows the fact finder to conclude an architect had notice of flooding where he was advised by county officials that in the year preceding construction flood waters from a nearby stream had risen to a level two feet higher than the proposed building. In each case testimony at trial was adduced to show conditions which existed at the time of the negligent conduct, which should have put the liable party on notice.

By contrast, in this case there is no testimony as to what specific problem the resident inspector should have seen during construction which he failed to report. The city's expert concluded something must have gone wrong in the construction phase because of the latent defect ultimately uncovered. Taking this evidence and the inferences in a light most favorable to the city, this testimony established that something must have occurred in the construction phase which, to a reasonable degree of engineering certainty, most probably caused the voids in the wall. Because there was testimony that the cement vibrators inserted into the concrete to mix the gravel were experiencing difficulty at the time it was poured, and armed with the knowledge that voids exist in the wall, common sense tells us that these problems resulted in the defective wall. What common sense does not tell us is whether those construction difficulties should have placed a reasonable engineer on notice that the wall would be defective. Without this testimony the jury's decision is pure conjecture. A few queries illustrate the point. Should an engineer who sees difficulties in managing a cement vibrator during pouring stop the pour? If so, should the engineer then tear down the forms to see if there are voids forming? With what among of pouring difficulty should an engineer anticipate, to a reasonable degree of engineering certainty, that the integrity of the wall has been compromised? As these questions demonstrate, without expert testimony the issue of notice cannot be answered under the circumstances of this case.

In summary, the city's failure to present expert testimony that Mayes, Sudderth breached its professional standard of care was fatal to its negligence claim. We hold Mayes, Sudderth is therefore entitled to judgment as a matter of law.

Reversed.

HOWELL, C.J., and SHAW, J., concur.