480 S.E.2d 447

**U.S. f/u/b/a WILLIAMS ELECTRIC COMPANY INC., Plaintiff,**

v.

**METRIC CONSTRUCTORS, INC., et al., Defendant.**

No. 24551.

Supreme Court of South Carolina.

Heard Nov. 20, 1996.

Decided Jan. 20, 1997.

George Papaioanou, Bert R. Oastler and Charles W. Surasky, all of Smith, Currie & Hancock, Atlanta, and Timothy W. Bouch of Young, Clement, Rivers & Tisdale, Charleston, for plaintiff.

James L. Bruner and Brian P. Robinson of Bruner, Powell & Robbins, Columbia, for defendant.

WALLER, Justice:

The following question has been certified to this Court by the United States District Court for the District of South Carolina:

Under the facts of this case, what exceptions, if any, to an unambiguous no-damages-for-delay clause in a construction contract would the South Carolina Supreme Court recognize?

## FACTS

Metric, general contractor for construction of a new federal prison in Estill, S.C., hired Williams Electric Company as the major electrical subcontractor. The contract, written by Metric, contains the following no-damages-for-delay clause:

7. *Extensions of Time....* In the event the Subcontractor's performance of this Subcontract is delayed or interfered with by acts or omissions of the Owner, Contractor or other subcontractors, Subcontractor may request an extension of time for the performance of this Subcontract as hereinabove provided, but shall not be entitled to any increase in the subcontract Price or to damages or additional compensation as a consequence of such delays or interference except to the extent that the Contract entitles Contractor to compensation therefor and then only to the extent of any amounts that Contractor, on behalf of Subcontractor, recovers from Owner for such delays or interference.

During construction of the prison, Williams suffered delays caused primarily by Metric's failure to properly coordinate and manage the subcontractors. As a result, Williams incurred more labor and material costs than anticipated and was required to remain on the project for months after its scheduled completion date. Subsequent to completion of the prison, Williams brought this action in the Federal District Court under the Miller Act [1] for additional expenses caused by the delays. Metric answered and sought summary judgment, contending it is not liable by virtue of the no-damages-for-delay clause.

## DISCUSSION

■ Generally, no-damage-for-delay provisions are valid and enforceable so long as they meet ordinary rules governing the validity of contracts. *See* Annot., *Validity and Construction of "No Damage Clause" with Respect to Delay in Building or Construction Contract*, 74 A.L.R.3d 187, § 2[a] (1976). A majority of jurisdictions, however, recognize certain exceptions to such clauses. *Id.* Among the recognized exceptions

---

1. 40 U.S.C. § 270a et seq. The Miller Act requires contractors on federal construction projects to furnish a payment bond to protect subcontractors.

are (a) delay caused by fraud, misrepresentation, or other bad faith; (b) delay caused by active interference; (c) delay which has extended such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; (d) delay that was not contemplated by the parties; and (e) delay caused by gross negligence.

We premise our discussion by recognizing that, in South Carolina, there exists in every contract an implied obligation of good faith and fair dealing. *Adams v. Creel,* 320 S.C. 274, 465 S.E.2d 84 (1995); *Parker v. Byrd,* 309 S.C. 189, 420 S.E.2d 850 (1992); *Tharpe v. G.E. Moore,* 254 S.C. 196, 174 S.E.2d 397 (1970). Accordingly, to the extent these exceptions give rise to a violation of this obligation, we find them to be a logical extension of South Carolina law. We address the exceptions seriatim.

### a. Delay caused by fraud, misrepresentation, or other bad faith.

The most widely recognized exception to the enforceability of a no-damage-for delay clause is fraud, misrepresentation or bad faith. 74 A.L.R.3d at 215–216, § 7(b). Of those cases addressing this exception, it appears to have been adopted in all but one jurisdiction. *See Owen Constr. Co. v. Iowa State Dept. of Transp.,* 274 N.W.2d 304 (Iowa 1979); *Jensen Constr. Co. v. Dallas County,* 920 S.W.2d 761 (Tex. App.1996); *Newberry Square Development Corp. v. Southern Landmark, Inc.,* 578 So.2d 750 (Fla.1991); *J & B Steel Contractors, Inc. v. Iber & Sons,* 162 Ill.2d 265, 205 Ill.Dec. 98, 642 N.E.2d 1215 (1994); *White Oak Corporation v. Department of Transportation,* 217 Conn. 281, 585 A.2d 1199 (Conn. 1991); *State Highway Admin. v. Greiner,* 83 Md.App. 621, 577 A.2d 363 (1990) (all recognizing exception for fraud or bad faith). *But see Marsch v. Southern N.E.R. Corp,* 230 Mass. 483, 120 N.E. 120 (1918) (declining to adopt fraud exception).

Clearly, fraud, misrepresentation and bad faith in performance of one's contractual duties would give rise to a violation of the implied obligation of good faith and fair dealing. *See O'Quinn v. Beach Associates,* 272 S.C. 95, 249 S.E.2d 734 (1978) (recognizing that a contract may be avoided on grounds of fraud). Accordingly, we find that adoption of this exception

is a logical extension of South Carolina law and join the majority of jurisdictions in adopting this exception.

### b. Delay caused by active interference

A majority of courts also adopt an exception to a no-damage-for-delay clause in cases of direct, active, willful interference with the work of the contractor. 74 A.L.R.3d at 219–221, § 7(e). *See also Newberry Square Development v. Southern Landmark, supra; Owen Constr. Co. v. Iowa State Dept. of Transp., supra; Green Plumbing & Heating Co. v. Turner Constr. Co.,* 500 F.Supp. 910 (E.D.Mich.1980) (applying Mich. law); *Christiansen Bros., Inc. v. State,* 90 Wash.2d 872, 586 P.2d 840 (1978). This Court has recognized that where performance of a contract by the vendor is prevented by the vendee, the vendee may not take advantage of the delay.[2] *See Shannon v. Freeman,* 117 S.C. 480, 109 S.E. 406 (1921). Such active interference effectually violates the implied obligation of fair dealing. Accordingly, we find this exception to be a logical extension of South Carolina law.[3]

### c. Unreasonable delay justifying abandonment of the contract

A number of courts recognize an exception to a no-damage clause where delays are so unreasonable in length or

---

**2.** South Carolina also recognizes an action for willful interference with contract. *See Martin v. One Chevrolet Truck,* 207 S.C. 87, 34 S.E.2d 474 (1945). Such an action, however, requires interference by a third party.

**3.** Metric does not oppose adoption of this exception, but urges us to adopt the definition of "active interference" embraced by the Iowa court in *Peter Kiewit Sons' Co. v. Iowa Southern Utilities Co.,* 355 F.Supp. 376, 399 (S.D.Iowa 1973) as follows:

... to be guilty of "active interference" ..., the defendants herein would have to have committed some affirmative, willful act, in bad faith, to unreasonably interfere with plaintiff's compliance with the terms of construction contract.... [U]se of the term "active" to modify "interference" ... clearly implies more than a simple mistake, error in judgment, lack of total effort, or lack of complete diligence ...

As there is already a specific exception for bad faith, we decline to adopt so much of this definition as requires a showing of "bad faith." Trial courts of this state may, however, utilize the remainder of the *Kiewit* definition in fashioning an appropriate jury charge.

duration that they amount to an abandonment of the contract, or would justify the contractor's abandonment. 74 A.L.R.3d at 226–230, § 7(i). Both this Court and the Court of Appeals have recognized that a contract may be abandoned. *Quality Concrete Products, Inc. v. Thomason,* 253 S.C. 579, 172 S.E.2d 297 (1970); *Ro–Lo Enterprises v. Hicks Enterprises,* 294 S.C. 111, 362 S.E.2d 888 (Ct.App.1987). An abandonment need not be express but may be inferred from the conduct of the parties and attendant circumstances. *Quality Concrete, supra.* Abandonment of contract by one party is the giving up of the right to a benefit due from the other party. *Ro–Lo, supra.* As with the above-mentioned exceptions, an abandonment of the contract involves a breach of the implied obligation of good faith and fair dealing. Accordingly, we adopt this exception and find that if a party abandons the contract, they also abandon their right to rely on a no damage for delay clause.

### d. Delays not contemplated by the parties.

The most contested of the exceptions is that for "delay not contemplated by the parties." Under this exception, a number of courts find that a "no damage" provision will not bar claims resulting from delays caused by the contractee if the delays "were not within the contemplation of the parties at the time they entered into the contract." *Corinno Civetta Const. v. City of New York,* 67 N.Y.2d 297, 502 N.Y.S.2d 681, 686, 493 N.E.2d 905, 910 (1986). The rationale for this exception, as stated by the *Corinno Civetta* court, is that "[i]t can hardly be presumed ... that the contractor bargained away his right to bring a claim for damages resulting from delays which the parties did not contemplate at the time."

However, this view is not universally accepted and has recently been questioned by a number of courts. *See e.g. State Highway Administrator v. Greiner,* 83 Md.App. 621, 577 A.2d 363 (1990); *Gregory and Son, Inc. v. Guenther and Sons,* 147 Wis.2d 298, 432 N.W.2d 584 (1988). These courts hold that a clear, unambiguous clause which precludes a contractor's recovery of damages for "any delays" is binding, notwithstanding uncontemplated delays, absent some allegation of intentional wrongdoing, gross negligence, fraud, or misrepre-

sentation. *Greiner, supra.* In *Gregory,* the Wisconsin Supreme Court stated:

> Indeed, the adoption of a no-damage-for-delay clause shows that the parties realize that some delays cannot be contemplated at the time of the drafting of the contract. . . . The parties can deal with delays they contemplate by adjusting the start and completion dates or by including particular provisions in the contract. "[I]t is the unforeseen events which occasion the broad language of the clause since foreseeable ones could be readily provided for by specific language." *City of Houston v. R.F. Ball Constr. Co., Inc.,* 570 S.W.2d 75, 78 (Tex.Civ.App.1978).

432 N.W.2d at 587.

 It has long been the law in this State that when a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and used in their plain, ordinary sense. *See C.A.N. Enterprises v. S.C. Health and Human Services,* 296 S.C. 373, 373 S.E.2d 584 (1988). "A party to a written contract, where there is no ambiguity or indefiniteness in the essentials, cannot say their minds did not meet." *Arant v. Mack,* 204 S.C. 287, 294, 28 S.E.2d 846, 849 (1944). This Court has routinely refused to engage in re-writing the terms of the parties' contract. *See e.g. C.A.N. Enterprises v. S.C. Health and Human Services supra* (duty of a court is to enforce contract as written, regardless of the wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully). We find that it would be inconsistent with South Carolina law to adopt this exception. Accordingly, we follow *Greiner* and *Gregory* and hold that the courts of this state do not recognize the "delays not contemplated by the parties" exception to a no-damages clause.

### e. Delays caused by gross negligence

 The final exception to a "no-damage-for delay" clause referenced in the district court's certification order is "gross negligence." Several jurisdictions have adopted this exception. *See North Star Contracting Corp. v. City of New York,* 203 A.D.2d 214, 611 N.Y.S.2d 11 (1994); *Greiner, supra; Gregory, supra; Newberg, Inc. v. Illinois State Toll Highway*

*Authority,* 153 Ill.App.3d 918, 106 Ill.Dec. 858, 506 N.E.2d 658 (Ill.1987); *Corinno Civetta supra; White Oak Corp v. Dept. of Transp, supra.* We find that willful, wanton, reckless conduct, i.e., gross negligence would, from a policy standpoint, give rise to a breach of the implied obligation of good faith and fair dealing. Accordingly, we find adoption of the gross negligence exception is consistent with South Carolina law.

## CONCLUSION

We hereby adopt, consistent with the implied obligation of good faith and fair dealing, the exceptions for delay caused by fraud, misrepresentation, or other bad faith; active interference; delay which amounts to an abandonment of the contract; and gross negligence. We decline to adopt an exception for "delays not contemplated by the parties."

**CERTIFIED QUESTION ANSWERED.**

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.