THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Plowden
 Construction Co., Respondent-Appellant,
 v.
 Richland-Lexington
 Riverbanks Park District and The LPA Group Incorporated, Appellants-Respondents.
 
 
 

Appeal From Lexington County
Alexander S. Macaulay, Circuit Court Judge
Unpublished Opinion No. 2008-UP-207
Submitted March 4, 2008  Filed March 25,
 2008    
AFFIRMED

 
 
 
 Daniel T. Brailsford and Charles H. McDonald, of Columbia, for
 Appellants-Respondents.
 Thomas Elihue Dudley, III, of Greenville, for
 Respondent-Appellant.
 
 
 

PER CURIAM:  This
 case arises out of a construction contract between Richland-Lexington Riverbanks Park District
 (Riverbanks) and Plowden Construction Company, Inc. (Plowden) for Plowden
 to build a road for Riverbanks.  During construction, Plowden encountered
 excess rock and brought the underlying action against Riverbanks and the
 project engineer, the LPA Group, Inc., (LPA).  Riverbanks and LPA appeal the
 trial courts ruling for Plowden, and Plowden cross-appeals for prejudgment
 interest on its award.  We
 affirm.[1]
1.  Riverbanks hired LPA to assist with the construction
 of a new entrance from Highway 378 to the Riverbanks Zoo and Botanical Gardens
 in Columbia.  LPA designed the entrance, prepared bid packages and contract
 documents for prospective contractors, and acted as Riverbanks representative
 during construction.  Initially, the bid packages were unclassified with
 regard to the amount of rock excavation that would be encountered on the job.[2] 
 However, the packages were changed to reflect an estimate of 1,000 cubic yards of
 rock to be excavated.  At a pre-bid meeting, potential bidders were assured by
 LPA that if the encountered rock became a huge problem, they were more than
 willing to worth with [the bidders].
Plowden
 was ultimately awarded the job.  Soon after construction began, Plowden
 encountered bedrock, which required blasting in order to be removed.  Plowden
 proceeded with the work, but eventually the amount and size of rocks being
 excavated began to interfere with the project.  The rocks became too large and numerous
 to leave at the construction site, and Plowden finally halted construction on
 the project.  This resulted in a delay while a location to deposit the rocks
 was sought by LPA.
Pursuant
 to a provision in the contract, Plowden sought a change in the contract price
 to reflect the quality and quantity of rock removal associated with the
 project.  The project manager denied the requested changes finding the contract
 indicated quantities were approximate, Plowden was responsible for examining
 the physical conditions of the property before bidding, and the work stoppage
 was unnecessary.  Plowden brought the underlying action against Riverbanks and
 LPA.  The trial court found Riverbanks and LPA jointly and severally liable for
 $225,270.17, the cost of the additional work, and $66,000 in delay costs. 
 Riverbanks and LPA appeal the trial courts ruling, and Plowden cross-appealed
 for prejudgment interest.
2.  LPA argues the trial
 court erred in finding LPA liable when LPA lacked privity in the contract
 between Riverbanks and Plowden and LPA followed the standard of care for design
 professionals.  The trial court found LPA liable for breaching its duty to
 follow the standard of care of design professionals.  In Tommy L. Griffin
 Plumbing & Heating Co. v. Jordan, Jones &  Goulding, Inc.,
 320 S.C. 49, 55, 463 S.E.2d 85, 88-89 (1995), the South Carolina Supreme Court
 held an engineer who designed the project and supervised construction owed a
 duty to the contractor not to design or to supervise the project negligently because
 design professionals owe a professional duty, which is separate from
 contractual duties.  Therefore, LPAs liability is grounded in negligence, not
 contract principles.  Accordingly, LPAs privity to Riverbanks and Plowdens
 contract is irrelevant.
Next,
 we turn to whether evidence supports the trial courts finding LPA violated its
 professional duty.  In an action at law, when a case is tried without a jury,
 the trial courts findings of fact will be upheld on appeal when they are
 reasonably supported by the evidence.  Butler Contracting, Inc. v.
 Court St., LLC, 369 S.C. 121, 127, 631 S.E.2d 252, 255 (2006).  Where
 professional negligence is alleged, expert testimony is usually necessary to
 establish both the standard of care and the professionals deviation from that
 standard, unless the subject matter is within the area of common knowledge and
 experience of the layman so that no special learning is needed to evaluate the
 professionals conduct.  City of York v. Turner-Murphy Co., Inc., 317
 S.C. 194, 196, 452 S.E.2d 615, 617 (Ct. App. 1994).
At
 trial, Herman Snyder, qualified as an expert in road construction in South Carolina, testified it is within industry standards for a contractor to rely on
 geotechnical information when preparing bids and it is the designers
 responsibility to reflect accurately the anticipated scope of work in its
 report to assist the bidder.
Additionally,
 Carroll Crowther was qualified as an expert in geotechnical engineering and
 construction consulting.  Crowther testified the normal practice in the
 construction industry is to rely on geotechnical reports when computing bids. 
 Crowther further testified the method used by LPA to produce its report was
 superficial and required a leap of faith for the report to provide information
 regarding the locations rock profile.  Lastly, Crowther testified LPAs
 actions only minimally reduced the risk of a contractor encountering unknown
 situations.
Snyder
 and Crowther established a basis for the factfinder to conclude that the standard
 in the industry is for a design professional to provide reasonably accurate
 estimates, because it is the norm for bidders to rely on the provided
 information.  Furthermore, Crowthers testimony clearly intimates that LPA was
 negligent in providing bidders with only superficial information about the rock
 associated with the project.  Consequently, the record supports the trial
 courts finding of professional negligence on the part of LPA.
3.  Riverbanks and LPA
 allege Plowden expressly or primary impliedly assumed the risk the unit price
 for rock excavation was inadequate.  Express assumption of risk applies when
 the parties expressly agree in advance, either in writing or orally, that the
 plaintiff will relieve the defendant of his or her legal duty toward the
 plaintiff.  Davenport v. Cotton Hope Plantation Horizontal Prop.
 Regime, 333 S.C. 71, 79, 508 S.E.2d 565, 569 (1998).  Whereas, primary
 implied assumption of risk focuses on the defendants duty of care and whether
 the plaintiff impliedly assumed risks inherent in the specific activity.  Id. at 81, 508 S.E.2d at 570.
Riverbanks
 and LPA point to areas in the contract where the bid schedules quantity of
 work is described as approximate and the contractor represents to have studied
 all reports on the site.  Section 11.9.3 in the contract undermines Riverbanks
 and LPAs argument as it provides:

 Where
 the quantity of any item of Unit Price Work performed by CONTRACTOR differs materially
 and significantly from the estimated quantity of such item indicated in the
 Agreement and there is no corresponding adjustment with respect to any other
 item of Work and if CONTRACTOR believes the CONTRACTOR has incurred additional
 expense as a result thereof, CONTRACTOR may make a claim for an increase in the
 Contract Price in accordance with Article 11 if the parties are unable to agree
 as to the amount of any such increase. 

(emphasis added).  Therefore,
 any risk Plowden assumed did not rise to the level of assuming responsibility
 for a rock quantity materially and significantly differing from the provided
 estimate.  Given the drastic difference between the estimated quantity of rock
 and the amount Plowden encountered, the trial courts reliance on section
 11.9.3 was clearly justified.  Further, as discussed above, Plowden established
 LPA owed Plowden a duty of care.  Accordingly, there is evidence to support the
 trial courts rejection of this defense.
4.  Riverbanks and LPA
 appeal the trial courts finding that the no-damage-for-delay provision in the
 contract was not enforceable.  Generally,
 no-damage-for-delay provisions are valid and enforceable so long as they meet
 ordinary rules governing the validity of contracts.  U.S. for Use and
 Benefit of Williams Elec. Co., Inc. v. Metric Constructors, Inc., 325 S.C. 129,
 132, 480 S.E.2d 447, 448 (1997).  South Carolina recognizes several exceptions
 to this general rule, including delay caused by fraud, misrepresentation, or
 other bad faith; active interference; delay which amounts to an abandonment of
 the contract; and gross negligence.  Id. at 137, 480 S.E.2d at 451.
The
 trial court found the no-damage-for-delay clause unenforceable due to active
 interference and gross negligence by LPA, while acting as Riverbanks
 representative, in failing to locate a site to move the excess rocks.  In
 August 2000, Plowden informed LPA the rock estimation had already doubled and
 requested LPA provide a location where Plowden could deposit the excess rock. 
 The record includes a chronology and many letters where Plowden repeatedly asked
 for a rock disposal location because the lack of such a site slowed the
 projects progress and eventually caused construction to cease.  During this
 time, LPA repeatedly claimed to be working on finding a site.  LPA took
 approximately three months to locate a site.
Because
 there is evidence in the record which supports the trial courts decision, we
 are constrained by our standard of review to affirm the trial courts holding
 that the no-damage-for-delay clause was not enforceable.
5.  Riverbanks and LPA next argue the trial court erred in
 calculating the damages awarded Plowden because of lack of proof of damages and
 the damages exceeded the original unit price for the non-excessive quantities
 of rock.  Plowden provided evidence of the additional costs created, which the
 trial court adopted less the money previously paid Plowden.  This evidence
 reasonably supports the trial courts award.  As previously discussed, section
 11.9.3 of the contract provided for Plowden to seek an increase in the contract
 price if the quantity of any item of Unit Price Work performed by CONTRACTOR
 differs materially and significantly from the estimated quantity of such item
 indicated in the Agreement.  Plowden established the quantity of rock differed
 materially and significantly warranting adjusted compensation.  Thus, no error
 occurred when the trial court awarded Plowden $225,270.17 for the cost of the
 additional work.
6.  Finally, Plowden
 cross-appeals seeking prejudgment interest.  [P]rejudgment
 interest is allowed on a claim of liquidated damages; i.e., the sum is certain
 or capable of being reduced to certainty based on a mathematical calculation previously agreed to by the parties.
 Prejudgment interest is not allowed on an unliquidated claim in the absence of
 an agreement or statute.  Butler Contracting, Inc. v. Court
 Street, LLC, 369 S.C. 121, 133, 631 S.E.2d 252, 258-59 (2006)).  Plowden
 seeks prejudgment interest on the increased cost of work.  As discussed above,
 the contract set forth a process for Plowden to recover the increased cost if
 the amount of work materially and significantly differed from the estimated
 work.  This allowance of an adjustment in contract
 price speaks to the uncertainty regarding the nature and extent of work
 contemplated by the contract.  See Vaughn Dev., Inc. v. Westvaco Dev.
 Corp., 372 S.C. 576, 580-81, 642 S.E.2d 757, 760-61 (Ct. App. 2007)
 (declining to award prejudgment interest where the extent of work on sewer
 installation or how the work would be accomplished was not dictated by the
 terms of the contract).  The contract did not set forth a formula to determine
 such an adjustment.  Therefore, Plowdens damages were not capable of being
 reduced to certainty until the determination by the trial court.  The trial
 court properly declined to award prejudgment interest.
7.  We
 conclude the record reasonably supports the trial courts findings LPA breached
 its standard of care as a design professional; Plowden did not assume the risk
 of the rock removals increased costs; the no-damage-for-delay provision was
 unenforceable; and the damage award was proper.  Further, the trial court
 properly declined to award prejudgment interest.  Accordingly, the judgment of the trial court is
 
 AFFIRMED.
HUFF, KITTREDGE, and WILLIAMS, JJ., concur.

[1]  We decide this
 case without oral argument pursuant to Rule 215, SCACR.
[2] Unclassified generally means the contractor is
 responsible for excavating whatever rock is encountered.